## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re Great Expressions Data Security Incident Litigation | Case No.: 2:23-cv-11185-JJCG-CI<br><br>Hon. Jonathan J.C. Grey |

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS

Representative Plaintiffs Vanessa Brito, Crystal Coffey, Jacqueline Williams, Aprill Denson, as next friend of C.D., a minor, and James D. Patterson ("Plaintiffs"), on behalf of themselves and all others similarly situated, seek the Court's approval of the Class Action Settlement Agreement attached hereto, and submit that the Settlement Class should be preliminarily certified, and the Settlement preliminarily approved as fair, reasonable, and adequate. Plaintiffs request the Court enter the order proposed by the Parties directing that the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing. This motion is supported by the Brief contained herein. The Parties have conferred, and Defendants do not oppose the relief requested herein.

Dated: June 28, 2024

Respectfully Submitted,

1

/s/ Joesph M. Lyon
Joseph M. Lyon
THE LYON FIRM
2754 Erie Avenue
Cincinnati, OH 45208
Tel: (513) 381-2333
Fax: (513) 766-9011
Email: jlyon@thelyonfirm.com

Patrick A. Barthle II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

*Attorneys for Plaintiffs and Proposed Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re Great Expressions Data Security Incident Litigation | Case No.: 2:23-cv-11185-JJCG-CI<br><br>Hon. Jonathan J.C. Grey |

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS

**<u>Concise Statement of the Issues Presented</u>**

1.      Whether the Court should preliminarily approve the Parties' proposed class action settlement, conditionally certify the Settlement Class, direct that the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan, and schedule a Final Approval Hearing.

## **Controlling or Most Appropriate Authority for the Relief Sought**

***Authority supporting that the Court should preliminarily approve the Parties'
proposed class action settlement, conditionally certify the Settlement Class, enter
the order proposed by the Parties directing the Settlement Class be notified of the
proposed settlement in the manner set forth in the Notice Plan and schedule a
Final Approval Hearing***

*Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022)
(Ludington, J.)

*Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019 )

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.
Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)

## I.   <u>INTRODUCTION</u>

Following the exchange of informal discovery, and a full day of in person mediation, the Parties[1] reached a settlement to resolve claims arising from a Data Security Incident Defendants announced in May 2023. The settlement creates a non-reversionary common fund of $2,700,000 for the benefit of approximately 1,945,788 individuals, including (i) reimbursement for Ordinary Out-of-Pocket Losses and Ordinary Attested Time for SSN Subclass Members; (ii) reimbursement for Extraordinary Losses for SSN Subclass Members; (iii) Cash Payments for SSN Subclass Members; and (iv) reimbursement for Attested Time for Non-SSN Subclass Members. Subject to the Court's approval, the Settlement Fund will also pay for a notice and administration program, service awards for Plaintiffs, and attorneys' fees and expenses. Defendants commit to pay for, implement, and continue certain data-security practices.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case, while balancing the risks of future litigation, and considering the time value of present compensation. The settlement is fair,

---

[1] The parties to the settlement are the employee and patient Settlement Class Representatives, on behalf of the proposed Settlement Class, and Defendants ADG, LLC d/b/a Great Expressions Dental Centers ("ADG") and Great Expressions Dental Centers, P.C. ("GEDC") (collectively, "Defendants"). Capitalized terms used in this Brief have the same meaning as in the Settlement Agreement ("S.A."), attached hereto as Exhibit 1.

reasonable, and adequate and meets the requirements of Rule 23(e). Plaintiffs thus move for an order preliminarily approving the settlement, conditionally certifying the class, directing class notice, and scheduling a Final Approval Hearing. In support, Plaintiffs submit the Settlement Agreement ("S.A.") (Ex. 1), including a proposed order, which Defendants have approved (Ex. D to the S.A.); the declaration of proposed co-Class Counsel Patrick A. Barthle II ("Barthle Decl.") (Ex. 2); and the declaration of Scott M. Fenwick, Esq. on behalf of proposed Claims Administrator Kroll, LLC ("Kroll") ("Fenwick Decl.") (Ex. 3).

## II.   FACTUAL BACKGROUND

### A. Overview of the Litigation

Between February 17 and February 22, 2023, Defendants experienced a Data Security Incident that impacted some of their IT systems. Defendants determined that the Threat Actor potentially accessed certain records containing personal information pertaining to current and former employees and patients of Defendants' customers/licensees, including (1) for employees: names, Social Security numbers, driver's license numbers, passport numbers, and/or bank account and routing number and (2) for patients, in various combinations: patient names, dates of birth, contact information, mailing addresses, Social Security numbers, driver's license numbers, financial account information, credit or debit card numbers, diagnosis and treatment information, medical and dental history, dental examination information,

charting information, treatment plans, x-ray images, dates of service, provider names, GEDC office of treatment, billing records, costs of services, prescription information and/or health insurance information. On or around May 12, 2023, Defendants began notifying individuals potentially impacted by the Incident.

On May 18, 2023, Plaintiff Brito filed a Class Action Complaint in this Court. Plaintiffs Coffey, Denson, and Williams subsequently filed cases that were consolidated with Plaintiff Brito's case. On August 28, 2023, Plaintiffs filed a consolidated Class Action Complaint. On October 9, 2023, Defendants moved to Dismiss the Complaint. Prior to the Court ruling on the motion, the Parties agreed to mediate their dispute and jointly requested a stay pending mediation. On May 15, 2024, the Parties stipulated to the addition of Plaintiff Patterson as a plaintiff in this action and Plaintiffs filed their First Amended Consolidated Complaint ("FAC").

On March 21, 2024, the Parties participated in an in-person mediation session facilitated by experienced mediator, Bennett G. Picker, in Palm Beach, Florida. After a full day of negotiations, and upon the Parties' acceptance of the mediator's recommendation as to the monetary amount, the Parties reached an agreement in principle. Over the next three months, the Parties continued to negotiate additional terms and on June 27, 2024, executed the Settlement Agreement.

**B. The Terms of the Proposed Settlement**

      **1.     The Settlement Class**

The proposed Settlement Class is defined as: all individual U.S. residents to whom Defendants sent notice that their PII was potentially impacted in the Data Security Incident. S.A. ¶ 1.29.[2] Defendants represent that the Settlement Class contains approximately 1,945,788 individuals. *Id.* Importantly, the Settlement Class is made up of two, distinct, subclasses: (1) the "SSN Subclass," which contains approximately 42,926 individuals whose Social Security numbers were potentially accessed or acquired during the Data Security Incident (S.A. ¶ 1.32); and (2) the "Non-SSN Subclass," containing  approximately 1,902,862 individuals whose Social Security numbers were not potentially involved in the Data Security Incident, (S.A. ¶ 1.14). As set out below, the relief available to each of the subclasses reflects this important difference in the sensitivity of information at issue in the Incident.

## 2.    The Settlement Fund

Defendants will pay $2,700,000.00 into a Settlement Fund, which will be used to pay class benefits, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court. *Id.*

---

[2] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendants; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Security Incident or who pleads nolo contendere to any such charge. *Id.*

¶ 2.1. This sum will be used entirely for the benefit of the Settlement Class and their representatives—no proceeds will revert to Defendants. *Id.* ¶¶ 2.1, 2.4, 7.5. The specific benefits available to Settlement Class Members include:

- **Ordinary Out-of-Pocket Losses and Ordinary Attested Time.** SSN Subclass Members may submit a claim of up to $500 per individual for Ordinary Out-of-Pocket Losses and Ordinary Attested Time. S.A. ¶ 2.2. "Ordinary" Out-of-Pocket Losses are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Data Security Incident that were incurred between February 17, 2023 and the Claims Deadline. *Id.* ¶ 2.2.1.Whether or not they incurred "Ordinary" Out-of-Pocket Losses, SSN Subclass Members may also submit a claim for up to 2 hours of time spent responding to receiving notice of the Data Security Incident at a rate of $20 per hour by providing an attestation and a brief description of: (1) the actions taken in response to receiving notice of the Data Security Incident; and (2) the time associated with each action ("Ordinary Attested Time"). *Id.* ¶ 2.2.3.

- **Extraordinary Losses.** In addition to submitting a claim for Ordinary Out-of-Pocket Losses, SSN Subclass Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Losses and Attested Time up to $5,000 per individual. S.A. ¶ 2.3. "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Security Incident, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. Extraordinary Losses may include, without limitation, the unreimbursed costs, losses, or expenditures incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the SSN Subclass Member's personal information. *Id.* ¶ 2.3.1.

- **Cash Payment.** In addition to, or in the alternative to, making Claims for Ordinary Out-of-Pocket Losses and Ordinary Attested Time and/or Claims for Extraordinary Losses, SSN Subclass Members may elect to receive a cash payment of up to $500 on a claims-made basis. *Id.* ¶ 2.6. Cash Payments for SSN Subclass Members will be subject to an aggregate cap of $300,000. If the aggregate amount of Cash Payments for SSN Subclass Members exceeds $300,000, such payments will be decreased *pro rata* to

total $300,000. If the aggregate amount of Cash Payments to SSN Subclass Members is less than $300,000, the remainder will be used to pay the claims for attested time by the Non-SSN Subclass Members. *Id.* ¶ 2.6.

- **Non-SSN Attested Time.** Non-SSN Subclass Members may submit a claim for up to 2 hours of time spent remedying issues related to the Data Security Incident at a rate of $20 per hour by providing an attestation and a brief description of: (1) the actions taken in response to the Data Security Incident; and (2) the time associated with each action ("Non-SSN Attested Time"). *Id.* ¶ 2.7. If the aggregate amount of Approved Claims for Non-SSN Attested Time by Non-SSN Subclass Members exceeds the remaining amount of the Settlement Fund (after payment of Approved Claims for Ordinary Out-of-Pocket Losses and Ordinary Attested Time, Approved Claims for Extraordinary Losses, Cash Payments, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court), such claims will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. If the aggregate amount of Approved Claims for Non-SSN Attested Time by Non-SSN Subclass Members is less than the remaining amount of the Settlement Fund, such claims will be increased *pro rata* to consume the remaining amount of the Settlement Fund or up to $80 per claim, whichever occurs first. Any remainder will be used to increase the Cash Payments for SSN Subclass Members *pro rata*. *Id.*

Settlement Class Members seeking any of these benefits must complete and submit either a written or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. *Id*. ¶ 2.8.2. For Claims for Ordinary Out-of-Pocket Losses and Claims for Extraordinary Losses, the claimant must provide documentation supporting their claim (*id*. ¶¶ 2.2.2, 2.3.2).

### 3.    Proposed Injunctive Relief—Data Security Commitments

In addition to the monetary consideration, for a period of 3 years following the execution of the Settlement Agreement, Defendants commit to pay for,

implement and continue certain data security practices, which are specified in the Settlement Agreement. *Id*. ¶ 2.9. These measures will provide additional protection to Plaintiffs and Settlement Class Members' PII in Defendants' possession.

### 4.     Proposed Notice and Claims Program

The Parties have agreed that the Court should appoint Kroll as the Claims Administrator to provide notice to Settlement Class Members and to process claims. *Id.* ¶ 1.5. The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure by giving direct summary postcard notice to the 1,945,788 Settlement Class Members via U.S. mail. Fenwick Decl. ¶ 3. Addresses are available for all Settlement Class members. Moreover, the Long Form Notice will be posted on the Settlement Website, along with other documents such as the Settlement Agreement, and a toll-free help line will be available to answer Class Members' questions. *Id.* ¶ 12. The notice effort is likely to reach at least 90% of the Settlement Class (and likely higher). *Id*. ¶ 13. In proposed Class Counsel's experience, and according to Kroll, the reach of the Notice Plan meets that of other court-approved notice programs, and has been designed to meet due process requirements, including the "desire to actually inform" requirement. *Id.* The Notice Plan is thus the best notice practicable under the circumstance of this case. *Id*.

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to submit claims electronically on the

Settlement Website or by mail. Kroll is a widely regarded expert with the experience and capability to handle a case of this magnitude. *See generally* Fenwick Decl.

### 5.    Attorneys' Fees and Expenses and Service Awards

Proposed Class Counsel may request a fee of up to one third of the Settlement Fund, or $ 900,000.00, and reimbursement of litigation expenses in an amount not to exceed $ 25,000.00 to be paid exclusively from the Settlement Fund. S.A. ¶ 7.2. Class Counsel may also request a service award of up to $ 2,500.00 for each Plaintiff to be paid exclusively from the Settlement Fund. *Id.* ¶ 7.3. Attorney Fees and service awards were only discussed following agreement on all material terms, and Defendants take no position on these requests. *Id.* ¶ 7.1.

### 6.    Releases

The Settlement Class will release Defendants from claims that were or could have been asserted in this case. The releases are detailed in the Settlement Agreement. *Id.* ¶¶ 1.25, 1.26, 6.1.

### III.   ARGUMENT

In *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022), another data breach case, Judge Ludington thoroughly laid out the criteria for approving a class action settlement in the data breach context.[3] Plaintiffs rely on

---

[3] Judge Ludington's analysis was recently applied in another data breach case in this District where preliminary approval was granted. *See Hummel v. Teijin Automotive Techs.*, No. 23-cv-10341 (E.D. Mich. Apr. 4, 2024) (Borman, J.) (ECF No. 26).

Judge Ludington's Order throughout this motion as it offers guidance particularly useful in the data breach context, including as follows:

> The claims of "a class proposed to be certified for purposes of settlement[ ] may be settled, voluntarily dismissed, or compromised only with the court's approval."[4]

> The question at the preliminary-approval stage is "simply whether the settlement is fair enough" to begin the class-notice process.[5]  At the preliminary-approval stage, Rule 23(e) requires the parties to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."[6]  "The court must direct notice" of a proposed settlement "to all class members who would be bound" by it if "the court will likely be able to approve the proposal under Rule 23(e)(2)[ ] and certify the class for purposes of judgment on the proposal."[7]

> After preliminary approval, notice, and time for objections, the proposed settlement may be finally approved "only after a hearing and only on finding that it is fair, reasonable, and adequate."[8]

## A. Rule 23 Class Certification.

### 1.  Rule 23(a) requirements.

#### i.  Numerosity.

"The Class must be 'so numerous that joinder of all members is impracticable.'" *Id.* at 765 (quoting Fed. R. Civ. P. 23(a)(1)). "Although 'there is no

---

[4] *Id*. at 764 (quoting Fed. R. Civ. P. 23(e)).

[5] *Id*. (quoting *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

[6] *Id*. (quoting Fed. R. Civ. P. 23(e)(1)(A)).

[7] *Id*. (quoting Fed. R. Civ. P. 23(e)(1)(B)).

[8] *Id*. (quoting Fed. R. Civ. P. 23(e)(2)).

strict numerical test, substantial numbers usually satisfy the numerosity requirement.'" *Id.* (quoting *Daffin v. Ford. Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). The proposed class includes approximately 1,945,788 individuals. S.A. ¶ 1.29. "This 'sheer' volume satisfies numerosity." *Morley Cos.*, 639 F. Supp. 3d at 765 (quoting *Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015)).

### ii. Commonality.

"The Class must share common questions of law or fact." *Id.* (citing Fed. R. Civ. P. 23(a)(2)). "Commonality requires 'a common contention' that, if resolved, would resolve claims of all class members 'in one stroke.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "A common question of law or fact exists if all the Class's members suffered the same injury." *Id.* (citing *Dukes*, 564 U.S. at 349-50). Common to all class members is whether Defendants' data security adequately protected their PII. *See generally* FAC. Commonality is satisfied because this issue is capable of class-wide resolution.[9]

### iii. Typicality.

"'[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(3)).

---

[9] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 765 ("Plaintiffs rely on the common question of whether Defendant's data security adequately protected the Class's personal information. This factual question is common to all the members of the Class. Therefore, it is capable of class-wide resolution, satisfying commonality.") (citations omitted).

"Typicality is satisfied if the representative's claim 'arises from the same [transaction or occurrence as] the claims of other class members, and [they] are based on the same legal theory.'" *Id.* (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). Plaintiffs' claims arise from the same incident that impacted other class members. *See* FAC ¶¶ 1-16. Typicality is satisfied because resolving Plaintiffs' claims would also resolve the class members' claims.[10]

### iv. Adequacy of representation.

"Finally, 'the representative parties [must] fairly and adequately protect the interest of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(4)). "Adequacy is governed by two criteria: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'"[11]

Plaintiffs' and Settlement Class Members' claims arise from the impact to their PII because of the Data Security Incident, and, accordingly, Plaintiffs and Settlement Class Members have a common interest in obtaining the best possible value for these claims. Plaintiffs actively participated in the case by assisting with

---

[10] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 765 ("The claims of Plaintiffs and the Class arise from the same Data Incident and resulted in similar theft of personal information. Thus, resolving one plaintiff's claims would resolve them for the Class, satisfying typicality.").

[11] *Id.* at 765-66 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)).

the initial and amended complaints and approving the settlement. Barthle Decl. ¶ 25.
The proposed service award does not misalign their interests with those of other class
members but rather fairly compensates Plaintiffs for their services to the Settlement
Class. These factors satisfy the adequacy requirement.[12]

### 2. Rule 23(b) requirements.

"The Class must also satisfy one of the three requirements of Rule 23(b)." *Id.*
(citing *Dukes*, 564 U.S. at 345). "Rule 23(b)(3) … permits class actions if (1) the
common questions of law and fact predominate over any questions affecting only
individuals and (2) the class-action mechanism is superior to the other available
methods for the fair and efficient adjudication of the controversy."[13]

### i. Common questions of law or fact predominate.

"Predominance is satisfied if the Class's individual questions of law or fact
'are sufficiently cohesive to warrant adjudication by representation.'"[14] Plaintiffs
allege that Defendants acted uniformly as to Plaintiffs and class members, resulting
in the theft of their PII and its placement on the dark web. *See* FAC ¶¶ 1-16. This

---

[12] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 766 ("The Class satisfies both criteria.
Plaintiffs have the same claims as the Class: that their personal information was
stolen after Defendant was the victim of a malware attack. Plaintiffs add that they
have 'participated actively' in the case. And the proposed lead-plaintiff incentive
award does not misalign the interests of Plaintiffs and the Class.") (citations
omitted).
[13] *Morley Cos.*, 639 F. Supp. 3d at 766 (citing Fed. R. Civ. P. 23(b)(3)).
[14] *Id.* (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)).

satisfies the predominance requirement.[15]

   ii. **Class action is the superior method to adjudicate the controversy fairly and effectively.**

"Superiority 'is met if the class action is a better way than individual litigation to adjudicate a claim.'"[16] "A class action is superior if it would 'vindicate[ ] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'"[17]

It would not be practical for 1,945,788 individuals to bring separate lawsuits against Defendants with claims arising from the Data Security Incident. Because a class action is the better method for Plaintiffs and Settlement Class Members to vindicate their rights, the superiority requirement is satisfied.[18]

**B. Appointment of Attorneys as Class Counsel.**

"After certifying a class, the court must appoint class counsel." *Morley Cos.*, 639 F. Supp. 3d at 766 (citing Fed. R. Civ. P. 23(g)(1)).

---

[15] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 766 ("Here, the injury of each member of the Class—the theft of personal information—was the result of Defendant's alleged 'uniform' course of conduct. In this way, all the claims of the entire Class involve the same questions of law and fact, satisfying predominance.") (citations omitted).

[16] *Id.* (quoting *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012)).

[17] *Id.* (quoting *Amchem*, 521 U.S. at 617).

[18] *See, e.g.*, *id.* ("A class action is the best way to vindicate the Class's rights under these circumstances. Because the data-breach issues predominate, it would be impractical for the members of the Class to individually sue the same defendant for theft of their personal information.") (citations omitted).

> Before appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.

*Id*. (citing Fed. R. Civ. P. 23(g)(1)).

This Court previously considered the qualifications and commitment of Proposed Class Counsel in appointing them Interim Co-Lead Class Counsel. (ECF No. 20). Since that appointment, Proposed Class Counsel have invested many hours fulling those obligations and negotiating and preparing this settlement for consideration by this Court. Barthle Decl. ¶ 2. Proposed Counsel have ample knowledge of the applicable law and the necessary resources to continue to commit to this case. *Id*. Accordingly, Patrick A. Barthle II and Joseph M. Lyon should be appointed as Class Counsel.[19]

## C. Preliminary Approval of Settlement Agreement.

"There are two steps for approving class settlements: '(1) preliminary approval of the settlement and the content and method of class notice; and (2) final approval after notice and a fairness hearing.'"[20]

---

[19] *See, e.g*., *Morley Cos.*, 639 F. Supp. 3d at 767 (appointing class counsel who "has invested many hours investigating the claims in this case," "has extensive experience in prosecuting data-breach class actions," and "[t]hrough that experience, he has ample knowledge of the applicable law and the necessary resources").

[20] *Id.* (quoting *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010)).

"At the preliminary-approval stage, the issue is whether the Agreement 'is fair enough . . . to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections.'"[21] "The Agreement should be . . . approved if it '(1) does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and (2) appears to fall within the range of possible approval' at the final-approval stage."[22]

### 1. Rule 23(e) Factors

Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and on a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a proposed settlement is committed to the sound discretion of the court. *See Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019).

> Four factors govern whether the Agreement is 'fair, reasonable, and adequate': (1) whether the class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats class members equitably relative to each other.

*Morley Cos.*, 639 F. Supp. 3d at 767-68.

### i.    Adequate representation.

---

[21] *Id.* (quoting *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

[22] *Id.* (quoting *Sheick*, 2010 WL 3070130, at *11).

Plaintiffs have the same claims as other class members and have actively participated in the case by working with proposed class counsel in preparing the initial complaint and First Amended Consolidated Complaint and in approving the settlement. Barthle Decl. ¶ 25. The proposed service award does not misalign the interests of Plaintiffs and other class members. Accordingly, the adequate representation requirement is satisfied.[23]

### ii.    Arm's length negotiation of settlement.

The parties mediated this case before a neutral mediator, Bennett G. Picker, and accepted the mediator's recommendation as to the monetary amount of the settlement. Before mediation, Defendants produced information related to (i) when Defendants learned of the Data Security Incident, (ii) when the Data Security Incident commenced and ended, (iii) the location of the dataset that contained information related to impacted individuals, (iv) the nature of the relationship(s) between impacted individuals and Defendants, (v) the data elements impacted, (vi) the geographic locations by state of impacted individuals, and (vii) the number of impacted individuals who enrolled in complimentary identity monitoring services that Defendants offered in the notice of the Data Security Incident. Barthle Decl. ¶

---

[23] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 765-66, 768 ("Plaintiffs have the same claims as the Class: that their personal information was stolen after Defendant was the victim of a malware attack. Plaintiffs add that they have 'participated actively' in the case. And the proposed lead-plaintiff incentive award does not misalign the interests of Plaintiffs and the Class.") (citation omitted).

18. This satisfies the requirement that the settlement be negotiated at arm's length.[24]

### iii.  Adequate relief.

> The adequacy of relief considers: (1)  the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (3) the terms of any proposed attorney's fee, including timing of payment; and (4) any agreement required to be identified under Rule 23(e)(2).

*Morley Cos.*, 639 F. Supp. 3d at 768 (citing Fed. R. Civ. P. 23(e)(2)(C)).

Additional litigation would be complex, costly, and likely continue for several years with no guarantee of relief. Barthle Decl. ¶ 29. A settlement now allows Settlement Class Members to obtain relief without high administrative burdens. *Id.* Settlement Class Members who do not wish to make a claim requiring documentation can simply "tear off" a claim form from the proposed postcard notice, check boxes indicating whether they want to receive the settlement benefits for which they are eligible, and mail it to Kroll, postage prepaid. S.A. ¶¶ 3.1(f), 3.2.1. Claims requiring documentation may easily be made through the settlement website or by printing and mailing the claim form. The relief sought is adequate.[25]

---

[24] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 768 ("The parties negotiated the Agreement at arm's length. After conducting informal discovery, the parties settled through a neutral mediator …, and there is no evidence of fraud or collusion. Therefore, the second factor is satisfied.") (citations omitted).

[25] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 768 ("The relief sought is adequate. Plaintiffs acknowledge that more litigation would be complex, costly, and likely continue for several years with no guarantee of relief. The proposed method of distributing relief to the Class, including the processing of its claims, ensures that

### iv.    Equal treatment of class members.

"The Agreement must treat the members of the Class as relatively equal." *Id.* SSN Subclass Members may obtain (i) a Residual Cash Payment up to $500 and (ii) reimbursement for Ordinary Out-of-Pocket Losses and Ordinary Attested Time and/or Extraordinary Losses. Non-SSN Subclass Members may obtain reimbursement for Non-SSN Attested Time. This difference in relief reflects the fact that Non-SSN Class Members' most sensitive personal information, and that required for most types of identity fraud—social security numbers—were not impacted in the Incident. Finally, a $ 2,500 service award for each Plaintiff who brought this suit does not raise concerns about inequality.[26]

### 2.  Sixth Circuit Factors.

[The Sixth Circuit applies] a seven-factor test to assess whether or not a class action settlement is "fair, reasonable, and adequate" under Federal Rule of Civil Procedure 23(e). Those factors include: (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by

each member of the Class can obtain relief without high administrative burdens.") (citations omitted).

[26] *See, e.g.*, *id.* ("The Agreement must treat the members of the Class as relatively equal. The Agreement does so. It permits each member of the Class to receive the 'automatic benefit' of a three-year extension of identity monitoring. It also provides a form for each member of the Class to obtain 'Claimed Benefits,' including (1) out-of-pocket expenses, (2) lost-time claims, (3) California claims, (4) credit monitoring, and (5) password-management services. Such a system ensures the apportionment of relief among class members takes appropriate account of differences among their claims and injuries, thus satisfying equal treatment. And lead Plaintiffs' incentive award is only $1,500.00, so there are no concerns about the incentive award creating inequality.") (citations omitted).

the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest." Of the *UAW* factors, "[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits."[27]

Evaluation of these factors confirms that the proposed settlement is fair, adequate, and reasonable.

### i.  The risk of fraud or collusion.

"'Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.'"[28] The Court can safely conclude this settlement was negotiated at arm's length, without collusion, based on the terms of the settlement itself; the length and difficulty of the negotiations; and the involvement of an experienced mediator, Bennett G. Picker. This factor supports a finding that the Court will likely be able to approve the settlement.[29]

### ii.  The complexity, expense, and likely duration of the litigation.

"Courts must also consider the complexity, expense, and likely duration of litigation because 'the costs, delays[,] and multitudes of other problems' can

---

[27] *Déjà vu Servs.*, 925 F.3d at 894-95 (citing *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*") and quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)).

[28] *Morley Cos.*, 639 F. Supp. 3d at 769 (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).

[29] *See, e.g.*, *id.* ("No evidence of fraud or collusion exists here. On the contrary, the parties settled with a neutral mediator so this factor favors approval.") (citations omitted).

outweigh the value of the plaintiff's claims." *Id.* Plaintiffs face significant risks and costs should they continue to litigate the case through motion practice, trial, and potential appeals. Further, if Plaintiffs prevailed on their intended motion for class certification and successfully defeated Defendants' intended motions thus proceeding to trial, Plaintiffs would have faced significant risk, cost, and delay. Plaintiffs face the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation.

In contrast to the risks, costs, and delay posed by continued litigation and potential trial, the proposed Settlement provides certain, substantial, and immediate relief to the proposed Settlement Class without delay. It ensures that Settlement Class Members who submit valid Claims will receive guaranteed benefits now. It also requires injunctive relief that will help protect Class Member data from potential subsequent exposure. The substantial costs, risks, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.[30]

### iii.  The amount of discovery engaged in by the parties.

"A settlement is 'more likely to be fair and reasonable under the circumstances' if the parties have conducted discovery."[31] Although the Parties did

---

[30] *See, e.g.*, *id.* ("Plaintiffs acknowledge that continued litigation would be complex, costly, and likely continue for several years with no guarantee of relief. So this factor also favors approval.") (citation omitted).

[31] *Id.* at 769 (citing *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022)).

not engage in formal discovery here because settlement negotiations began at the motion-to-dismiss stage, "courts have held that settlements are permissible where, 'notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case.'"[32] Prior to mediating, Defendants provided such information. *See supra* at C.1.ii.[33] Moreover, Plaintiffs' counsel retained an expert to search for evidence that information exfiltrated during the Data Security Incident was available on the dark web. Barthle Decl. ¶ 18.

### iv. The likelihood of success on the merits.

"The likelihood of success on the merits 'provides a gauge from which the benefits of the settlement must be measured.'"[34] This case faces substantial hurdles should it continue forward. Plaintiffs would need to survive Defendants' forceful motion to dismiss, secure class certification, and surmount any further dispositive motions Defendants might file before proving their case at trial.[35]

---

[32] *Déjà Vu Servs.*, 925 F.3d at 898 (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)).

[33] *See also, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 770 ("Although the parties did not conduct formal discovery, they have conducted ample informal discovery for Plaintiffs to 'adequately assess their case and the desirability of the proposed settlement....' This factor thus favors approval.") (quoting *Kritzer v. Safelite Sols.*, LLC, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012)).

[34] *Morley Cos.*, 639 F. Supp. 3d at 770 (citing *Poplar Creek Dev. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011).

[35] *See, e.g.*, *id.* ("Plaintiffs have acknowledged the risk of continued litigation, especially the 'substantial hurdles' for data-breach cases at the pleadings stage. Therefore, this factor favors approval.").

### v.  The opinions of class counsel and class representatives.

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'"[36] Proposed class counsel supports the settlement, Barthle Decl. ¶¶ 27-32, which "favors approval too."[37]

### vi.  The reaction of absent class members.

"This factor is neutral because the . . . settlement is in the prenotice stage."[38]

### vii.  The public interest.

"'[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable' and settlement conserves judicial resources."[39] The public interest and judicial resources would be served by relief for the class.[40]

## D. Approval of proposed notice plan.

"After preliminarily approving a settlement, the court must direct notice of the proposed settlement to all class members who would be bound by the proposal." *Id.*

---

[36] *Id.* (quoting *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)).

[37] *Morley Cos.*, 639 F. Supp. 3d at 770.

[38] *Id.* (citing *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022)).

[39] *Id.* (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).

[40] *See, e.g.*, *id.* ("Settling this 694,679-person class action would further the public interest by providing relief for the entire Class and conserving judicial resources. Therefore, this factor favors approval.").

(citing Fed. R. Civ. P. 23(e)(1)(B)). Where a class "is being certified under Rule 23(b)(3), notice must be 'the best notice practicable' and include 'individual notice to all members who can be identified through reasonable effort.'" *Id.* (quoting Fed. R. Civ. P. 23(c)(2)(B)).

> Notice must also include the following in "plain, easily understood language": (1) The nature of the action; (2) The definition of the class certified; (3) The class claims, issues, or defenses; (4) That a class member may enter an appearance through an attorney if the member so desires; (5) That the court will exclude from the class any member who requests exclusion; (6) The time and manner for requesting exclusion; and (7) The binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)).

The proposed Notice Program provides that a Short Form Notice, with an attached "tear off" claim form with prepaid postage for claims that do not require documentation, shall be mailed to Settlement Class Members. *Id.* ¶ 3.2.1. Kroll shall mail a copy of the Short Form Notice via United States Postal Services ("USPS") first class mail to all Settlement Class Members for whom Defendants can ascertain a mailing address with reasonable effort. *Id.* For Settlement Class Members for whom Defendants are not able to ascertain a mailing address from their records with reasonable effort, Kroll shall use reasonable efforts to identify a mailing address and mail a copy of the Short Form Notice to such address. *Id.* For any Short Form Notices returned undeliverable, Kroll shall use reasonable efforts to identify updated mailing addresses and resend the Short Form Notice to the extent feasible. *Id.* Kroll shall

email a copy of the Short Form Notice to all Settlement Class Members for whom Defendants can ascertain an email address with reasonable effort. *Id.*

The Short Form Notice (i) states that a proposed settlement has been reached in a class action lawsuit arising from the Data Security Incident, (ii) defines the class as "all individual U.S. residents to whom Defendants sent notice that their personal information was potentially impacted in the Data Security Incident," (iii) explains that the claims in the lawsuit relate to the Data Security Incident and identifies the relief available to Settlement Class Members, (iv) advises that "Other Options" include exclusion from the Settlement or objecting to it, and (v) advises that Settlement Class Members who do not exclude themselves will give up their right to sue Defendants for the claims the Settlement resolves. S.A. Ex. B.

In addition to mailing the Short Form Notice, Kroll shall post a Long Form Notice on the Settlement Website. *Id.* ¶ 3.2.2. Plaintiffs submit that the notice program satisfies Rule 23 and due process and should be approved.[41]

## E. Timeline of Settlement Events

For the Court's convenience, Plaintiffs propose the following dates and deadlines leading to a final approval hearing.

---

[41] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 771 (finding text of similar notice "satisfie[d] the requirements of Rule 23 and due process").

| ACTION | DATE |
|---|---|
| Defendant Provides Class Member List | Within 7 days of an order directing class notice |
| Class Notice Date | 30 days after entry by the Court of the Preliminary Approval Order |
| Completion of Notice Program | 60 days after entry of the Preliminary Approval Order |
| Motion for Attorneys' Fees, Expenses, and Service Awards to Plaintiffs | 21 days prior to the Objection and Opt-Out Deadline |
| Exclusion / Opt-Out Deadline | 60 days after the Class Notice Date |
| Objection Deadline | 60 days after the Class Notice Date |
| Deadline to Submit Claims | 90 days after the Class Notice Date |
| Final Approval Brief and Response to Objections Due | At least 21 days prior to the Final Approval Hearing |
| Final Approval Hearing | (To be scheduled no earlier than 150 days after entry of Preliminary Approval Order) |

## IV.   CONCLUSION

For these reasons, Plaintiffs request the Court enter the order proposed by the Parties directing the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing.

Dated: June 28, 2024

Respectfully Submitted,

/s/ Joseph M. Lyon
Joseph M. Lyon
THE LYON FIRM
2754 Erie Avenue
Cincinnati, OH 45208
Tel: (513) 381-2333
Fax: (513) 766-9011
Email: jlyon@thelyonfirm.com

Patrick A. Barthle II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

*Attorneys for Plaintiffs and Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ *Joseph M. Lyon*
Joseph M. Lyon

27