**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re Great Expressions Data Security Incident Litigation | Case No.: 2:23-cv-11185-JJCG-CI<br><br>Hon. Jonathan J.C. Grey |

## PROPOSED CO-CLASS COUNSEL'S DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO CLASS

I, Patrick A. Barthle II, declare as follows:

1.     I am one of the two Proposed Class Counsel[1] in this matter, together with Joseph M. Lyon. I have personal knowledge of all the matters addressed in this Declaration, including the negotiations that culminated with the filing of the proposed settlement (the "Settlement") now before the Court.

2.     As detailed below, Proposed Class Counsel have led some of the country's most complex civil litigation; have been recognized by courts and national publications for our knowledge and experience in privacy and data breach cases; and are responsible for groundbreaking data breach settlements, including in settlements

---

[1] Capitalized terms are defined in the Settlement Agreement ("S.A.") attached to the motion for preliminary approval as Ex. 1.

approved in this judicial district. Proposed Class Counsel have invested many hours investigating the claims in this case and have extensive experience in prosecuting data-breach class actions. Through that experience, Proposed Class Counsel have ample knowledge of the applicable law and the necessary resources to commit to this case to its conclusion. For purposes of the Court's consideration of certifying the Settlement Class for settlement purposes and appointing Class Counsel, I briefly summarize our qualifications as part of this Declaration.

### *Patrick A. Barthle II*

3.     I am the second-longest tenured attorney in the Class Action Department of Morgan & Morgan.  Morgan & Morgan is the largest plaintiff-oriented, contingency-only law firm in the country, with over 1,000 lawyers throughout the United States. Its depth of skill as a trial firm, and its self-funded financial resources, allow it to undertake the largest and most significant cases throughout the country. Morgan & Morgan has demonstrated its willingness to zealously advocate for clients in data breach class actions by, among other things, pursuing and successfully obtaining class certification over the defendant's objection, *see In re: Brinker Data Incident Litig.*, No. 3:18-cv-00686 (M.D. Fla.), and successfully appealing the dismissal of cases for lack of standing or failure to state a claim, *see, e.g.*, *Sheffler v. Americold Realty Trust,* No. 1:21-cv-1075-TCB (N.D. Ga.); *Ramirez v. The Paradies Shops, LLC*, No. 1:21-cv-03758 (N.D. Ga.);

and *Bohnak v. Marsh & McLennan Cos., Inc.*, No. 1:21-cv-06096 (S.D.N.Y.). *See also* (ECF No. 19-2), Morgan & Morgan Class Action Dep't Resume.

4.      I have deep substantive experience in data breach cases such as this one. I have deposed multiple C-suite-level executives in these types of cases, prepared and examined expert witnesses, as well as briefed and argued motions for class certification and summary judgment in any number of data breach cases.   For example, in *In re: Yahoo! Inc. Customer Data Security Breach Litigation,* Case No. 16-md-2752, (N.D. Cal.), a data breach class action involving approximately three billion Yahoo user accounts, I was deeply involved in discovery, including with the depositions of multiple Chief Information Security Officers ("CISO") and other cybersecurity related witness, including the Chief Information Officer ("CIO"); as well as assisting with the reports, and defending the depositions, of Plaintiffs' cybersecurity and identity theft experts. Likewise, in the *In re Capital One Customer Data Security Breach Litigation*, Case No.: 1:19-md-2915 (E.D. Va.) case, I was heavily involved in all aspects of discovery including drafting and arguing myriad motions to compel and the taking of various depositions, including multiple corporate representative witnesses for both Capital One and Amazon Web Services, as well as arguing and briefing summary judgment and class certification.

5.      That experience is buoyed by my involvement in most of the highest profile data breach cases in the country, including substantive roles in cases such as,

amongst others: *In re The Home Depot, Inc. Consumer Data Sec. Data Breach Litig.*, No. 1:14-md-02583-TWT (N.D. Ga.) (data breach involving 40 million payment cards); *In re Office of Pers. Mgmt. Data Breach*, No. 1:15-mc-01394-ABJ (D.D.C.) (data breach involving millions of federal employees); *Adkins. v. Facebook, Inc*., No. C 18-05982 WHA (JSC) (N.D. Cal.) (data breach involving millions of Facebook users); and *In re Equifax, Inc. Customer Data Sec. Breach Litigation*, 1:17-md-02800 (N.D. Ga.) (data breach involving in excess of 140 million individuals).

6.     I have been appointed as Co-Lead Counsel in multiple pending data breach class actions, including *Hernandez et al. v. Advance America, Cash Advance Centers, Inc. et al*, Case No. 7:23-cv-4256 (D. S.C.); *Trottier et al. v. Sysco Corp*., Case No. 4:23-cv-01818 (S.D. Tex.); and *Thomas et al. v. Citi Trends, Inc*., Case No. 4:23-cv-00175 (S.D. Ga.), as well as previously by this Court as Interim Co-Lead Counsel, *see In re Great Expressions Data Security Incident Litigation*, Case No. 2:23-cv-11185, ECF No. 20 (E.D. Mich. Oct. 19, 2023);

7.     I have also been appointed as Settlement Class Counsel in a number of data privacy related cases, including:

> i.     *Torres v. Wendy's Int'l., LLC*, No. 6:16-cv-210 (M.D. Fla.) (final approval granted), a payment card data breach case;
>
> ii.     *Morrow v. Quest*, No.: 2:17-cv-0948(CCC)(JBC) (D.N.J.) (Final

Approval entered), a healthcare data breach case involving the loss of private health information (PHI); and

    iii.   *Abdelmessih v. Five Below Inc*., Case No. 2:19-cv-01487 (E.D. Pa.) (Final Approval entered), a payment card data breach case.

8.    Apart from data privacy cases, I have been appointed as Class Counsel in other consumer class action cases, including in *Swaney v. Regions*, Case No. 2:13-cv-00544-JHE (N.D. Ala.) (TCPA class action, Final Approval entered), *Peterson v. Apria Healthcare Group, Inc.*, Case No. 6:19-cv-00856 (M.D. Fla.) (TCPA class action, Final Approval entered), and *Guidry v. Penn Credit*, Case No.: 6:19-cv-1936-Orl41LRH (M.D. Fla.) (TCPA class action, Final Approval entered); and in *Richards et al. v. Chime Financial, Inc*., et al., Case No. 4:19-cv-06864 (N.D. Cal.), a case involving a payment disruption for certain payment card users.

9.    Notably, I am also no stranger to contested class certifications, having certified nationwide and multi-state classes in cases such as *Still v. Selene Finance, LP*, Case No. CJ-2013-51 (Okla. Dist. Ct, Nowata County) (multi-state certified class action concerning property inspections fees related to HUD-backed mortgages, now pending on appeal); and *Nolen et al. v. Fairshare Vacation Owners Association*, Case No. 6:20-cv-330-PGB-EJK (M.D. Fla.) (nationwide class certified concerning alleged breaches of fiduciary duties involving a Wyndham timeshare program).

10.    Prior to my class action legal practice, I attended the University of

Florida where I was admitted to the Honors Program and graduated, *cum laude*, with a double major in History and Criminology. Thereafter I attended Washington and Lee University School of Law, graduating *summa cum laude*, where I was a Lead Articles Editor for the Washington & Lee Law Review, a member of the Order of the Coif and the Phi Delta Phi Legal Honor Society, and President of the W&L Law Families student organization. My practice began at Greenberg Traurig, LLP, where I was involved in complex civil, commercial, and environmental litigation. Thereafter, I served as a judicial law clerk for two years to the Honorable Mary S. Scriven, United States District Judge, Middle District of Florida. Following my clerkship, I joined Morgan & Morgan's Complex Litigation Group, where, as explained above, I have been litigating—almost exclusively—class action cases for several years.

### Joseph M. Lyon

11.     *The Lyon Firm* is a Cincinnati, Ohio based law firm, representing individuals nationwide in class action and product liability litigation. The Firm also has an office in St. Louis, Missouri and Irvine, California. Joseph M. Lyon is the founder and sole member of the Firm that includes four attorneys and three staff members. The attorneys are licensed in Ohio, Kentucky, Illinois, California, Missouri, and Arizona, as well as numerous federal courts, including the Eastern District of Michigan.

12.     Over the past 20 years, Mr. Lyon has represented thousands of individual clients in a variety of complex litigation matters. Notably, he has served as Class Counsel, on Executive and Steering Committees, and as Plaintiffs' Counsel on over a hundred class actions. Furthermore, he has represented plaintiffs in over forty (40) Multidistrict ("MDL") product liability matters, where he has helped develop both common benefit evidence and case-specific evidence to support the general liability claims. These complex cases have involved a diverse range of legal, scientific, regulatory, and public policy issues involving medical devices, pharmaceutical products, toxic consumer products, and data privacy matters.

13.     More recently, the Firm has focused on privacy class action matters involving both data security issues ("Data Brach") and unauthorized tracking and data sharing ("Pixel") litigation. Courts have also routinely appointed Mr. Lyon and his Firm to leadership roles in data privacy matters, including, among others:

     i.  *Henderson v. Reventics, LLC*, Case No. *1:23-cv-00586* (D. CO): Appointed co-lead class counsel in consolidated data breach action impacting 4.2 million healthcare consumers;

    ii.  *Suhr v. DC Health Link*, Case No. 1:23-cv-00694 (D.DC): Appointed co-lead class counsel in highly publicized consolidated action involving a data breach impacting the health insurance marketplace for the District of Columbia;

iii.   *In re: NCB Management Services, Inc. Data Breach Litigation,* Case No. 2:23-cv-01236 (E.D. Pa): Appointed interim co-lead class counsel in consolidated action involving a data breach impacting over 1 million consumers;

iv.   *Migliaccio v. Parker Hannifin Corp.,* Case No. 1:22-cv-00835 (N.D. Ohio): Appointed co-lead class counsel by Judge Polster in data breach class action against multi-national manufacturer impacting 115,843 current and former employees; Final Approval granted for a $1,750,000.00 non-reversionary common fund;

v.   *Hawkins v. Navy Federal Credit Union,* Case No: 1:19-cv-01186 (E.D. Va): Appointed co-lead class counsel in TCPA class action; Final Approval granted for nationwide class and non-reversionary common fund settlement of $9,250,000 providing monetary compensation for class of over 66,000;

vi.   *Forslund v RR Donnelly*, Case No: 1:22-cv-04260 (N.D. Ill): Appointed co-lead class counsel in healthcare data breach impacting over 80,000 consumers; Final Approval of $970,000 non-reversionary common fund;

vii.   *Devine v. Health Aide of Ohio*, Case No: cv-21-948117 (Cuyahoga County, Ohio): Appointed co-lead class counsel in consolidated

data breach class action involving 141,149 medical patients; Final Approval granted for a claims made nationwide settlement providing monetary benefits and additional identity theft protection valued at over $12.5 million;

viii.   *In Re Southern Ohio Health System Data Breach, Case No: A-2101886* (Hamilton County, Ohio): Appointed co-lead counsel in consolidated data breach class action impacting two Ohio hospital systems and 420,433 patients' healthcare information; Final Approval granted for nationwide non-reversionary common fund settlement of $1,950,000.00;

ix.   *Engle v. Talbert House*, No. A 2103650 (Hamilton County, Ohio): Appointed co-lead class counsel in a data breach class action impacting over 300,000 medical patients; Final Approval granted for nationwide claims made settlement providing monetary benefits and additional identity theft protection with claimed value at $1,171,000.00 and offered class value of $49,840,000.00;

x.   *Tucker v. Marietta Area Health Care, Inc*., No. 2:22-cv-00184 (S.D. Ohio): Appointed co-lead in consolidated data breach class action involving ransomware attack on Ohio hospital that compromised the PII and PHI of 216,478 patients; Final Approval granted that would

provide for a $1,750,000.00 non-reversionary common fund;

    xi.    *Rodriguez v. Professional Finance Company, Inc.* Case No: 22-cv-01679 (D. CO): Appointed interim co-lead class counsel in consolidated action involving a data breach impacting over 2 million consumers; Preliminary Approval pending.

    xii.    *Bae v. Pacific City Bank*, No. 21STCV45922 (Los Angeles County Superior Court, Cal.): Appointed co-lead class counsel in a data breach class action involving 15,037 customers; Final Approval granted establishing a non-reversionary common fund of $700,000.00.

14.    Finally, Mr. Lyon has served as lead counsel in numerous catastrophic injury cases involving medical malpractice, industrial accidents, automotive product liability, firearm product liability, and toxic exposure. These complex cases required extensive motion practice, discovery and courtroom skills that will help advance the interests of this class. *See also* (ECF No. 19-1), Lyon Firm CV and Profile.

### *Overview of the Litigation*

15.    Between February 17 and February 22, 2023, Defendants experienced a Data Security Incident that impacted some of their IT systems. Defendants' investigation of the Data Security Incident determined that the Threat Actor potentially accessed certain records containing personal information pertaining to

current and former employees and patients of Defendants' customers/licensees, including (1) for employees: names, Social Security numbers, driver's license numbers, passport numbers, and/or bank account and routing number and (2) for patients, in various combinations: patient names, dates of birth, contact information, mailing addresses, Social Security numbers, driver's license numbers, financial account information, credit or debit card numbers, diagnosis and treatment information, medical and dental history, dental examination information, charting information, treatment plans, x-ray images, dates of service, provider names, GEDC office of treatment, billing records, costs of services, prescription information and/or health insurance information. On or around May 12, 2023, Defendants announced the Data Security Incident.

16.     On May 18, 2023, Plaintiff Brito filed a Class Action Complaint in this Court. Plaintiffs Coffey, Denson, and Williams subsequently filed cases that were consolidated with Plaintiff Brito's case. On August 28, 2023, Plaintiffs filed a consolidated Class Action Complaint. On October 9, 2023, Defendants moved to Dismiss the Complaint. Prior to the Court ruling on the motion to dismiss, the Parties agreed to mediate their dispute and jointly requested a stay of the case pending mediation.  On May 15, 2024, the Parties stipulated to the addition of Plaintiff Patterson as a plaintiff in this action and Plaintiffs filed their First Amended Consolidated Complaint ("the Complaint").

*Overview of Settlement Discussions*

17.     To explore and potentially negotiate a class-wide settlement, on March 21, 2024, the Parties participated in an in-person mediation session in Palm Beach, Florida, which was facilitated by an experienced mediator, Bennett G. Picker. After a full day of settlement negotiations, and upon the Parties' acceptance of the mediator's recommendation as to the monetary amount of the settlement, the Parties reached an agreement in principle.

18.     The negotiations were hard-fought throughout, and the process was conducted at arm's length and non-collusive. The mediation did not occur until after Defendants produced information related to, among other things: (i) when Defendants learned of the Data Security Incident, (ii) when the Data Security Incident commenced and ended, (iii) the location of the dataset that contained information related to impacted individuals, (iv) the nature of the relationship(s) between impacted individuals and Defendants, (v) the data elements impacted, (vi) the geographic locations by state of impacted individuals, and (vii) the number of impacted individuals who enrolled in complimentary identity monitoring services that Defendants offered when they provided notice of the Data Security Incident. Moreover, prior to the mediation, Proposed Class Counsel retained an expert to search for evidence that information exfiltrated during the Data Security Incident was available on the dark web. After extensive arm's length settlement negotiations,

the parties reached an agreement on the essential terms of settlement. The subjects of attorneys' fees, costs, and expenses, as well as service awards, subject to Court approval, were negotiated only after all substantive terms of the Settlement were agreed upon by the parties.

### *The Settlement Benefits Conferred on the Class*

19.    The proposed Settlement Class is defined as: all individual U.S. residents to whom Defendants sent notice that their personal information was potentially impacted in the Data Security Incident. S.A. ¶ 1.29.[2] Defendants represent that the Settlement Class contains approximately 1,945,788 individuals. *Id.* Importantly, the Settlement Class is made up of two, distinct, subclasses: (1) the "SSN Subclass," which contains approximately 42,926 individuals whose Social Security numbers were potentially accessed or acquired during the Data Security Incident (S.A. ¶ 1.32); and (2) the "Non-SSN Subclass," containing approximately 1,902,862 individuals whose Social Security numbers were not potentially accessed or acquired during the Data Security Incident, (S.A. ¶ 1.14). As set out below, the

---

[2] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendants; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Security Incident or who pleads nolo contendere to any such charge. *Id.*

relief made available to each of the subclasses reflects this important difference in the sensitivity of information at issue in the Incident.

20.   Under the proposed Settlement, Defendants will pay $2,700,000.00 into a Settlement Fund, which will be used to pay class benefits, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court. S.A. ¶ 2.1. This sum will be used entirely for the benefit of the Settlement Class and their representatives—absent denial of approval, no proceeds will revert to Defendants. *Id.* ¶¶ 2.1, 2.4, 7.5. The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement, and include:

- **Ordinary Out-of-Pocket Losses and Ordinary Attested Time.** SSN Subclass Members may submit a claim of up to $500 per individual for Ordinary Out-of-Pocket Losses and Ordinary Attested Time. S.A. ¶ 2.2. "Ordinary" Out-of-Pocket Losses are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Data Security Incident that were incurred between February 17, 2023 and the Claims Deadline. *Id.* ¶ 2.2.1. Whether or not they incurred "Ordinary" Out-of-Pocket Losses, SSN Subclass Members may also submit a claim for up to 2 hours of time spent responding to receiving notice of the Data Security Incident at a rate of $20 per hour by providing an attestation and a brief description of: (1) the actions taken in response to receiving notice of the Data Security Incident; and (2) the time associated with each action ("Ordinary Attested Time"). *Id.* ¶ 2.2.3.

- **Extraordinary Losses.** In addition to submitting a claim for Ordinary Out-of-Pocket Losses, SSN Subclass Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Losses and Attested Time up to $5,000 per individual. S.A. ¶ 2.3. "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly

traceable to the Data Security Incident, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. Extraordinary Losses may include, without limitation, the unreimbursed costs, losses, or expenditures incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the SSN Subclass Member's personal information. *Id.* ¶ 2.3.1.

- **Cash Payment.** In addition to, or in the alternative to, making Claims for Ordinary Out-of-Pocket Losses and Ordinary Attested Time and/or Claims for Extraordinary Losses, SSN Subclass Members may elect to receive a cash payment of up to $500 on a claims-made basis. *Id.* ¶ 2.6. Cash Payments for SSN Subclass Members will be subject to an aggregate cap of $300,000. If the aggregate amount of Cash Payments for SSN Subclass Members exceeds $300,000, such payments will be decreased *pro rata* to total $300,000. If the aggregate amount of Cash Payments to SSN Subclass Members is less than $300,000, the remainder will be used to pay the claims for attested time by the Non-SSN Subclass Members. *Id.* ¶ 2.6.

- **Non-SSN Attested Time.**  Non-SSN Subclass Members may submit a claim for up to 2 hours of time spent remedying issues related to the Data Security Incident at a rate of $20 per hour by providing an attestation and a brief description of: (1) the actions taken in response to the Data Security Incident; and (2) the time associated with each action ("Non-SSN Attested Time"). *Id.* ¶ 2.7. If the aggregate amount of Approved Claims for Non-SSN Attested Time by Non-SSN Subclass Members exceeds the remaining amount of the Settlement Fund (after payment of Approved Claims for Ordinary Out-of-Pocket Losses and Ordinary Attested Time, Approved Claims for Extraordinary Losses, Cash Payments, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court), such claims will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. If the aggregate amount of Approved Claims for Non-SSN Attested Time by Non-SSN Subclass Members is less than the remaining amount of the Settlement Fund, such claims will be increased *pro rata* to consume the remaining amount of the Settlement Fund or up to $80 per claim, whichever occurs first. Any remainder will be used to increase the Cash Payments for SSN Subclass Members *pro rata*. *Id.*

21.     Settlement Class Members seeking any of these benefits must complete

and submit either a written or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. *Id*. ¶ 2.8.2. For Claims for Ordinary Out-of-Pocket Losses and Claims for Extraordinary Losses, the claimant must provide documentation supporting their claim (*id*. ¶¶ 2.2.2, 2.3.2)

22.    In addition to the monetary consideration, for a period of 3 years following the execution of the Settlement Agreement, Defendants commit to pay for, implement and continue certain data security practices. *Id*. ¶ 2.9. These measure include: (1) implement and maintain use of a multi-factor authentication solution to gain access to Defendants' network via a virtual private network; (2) maintain a "whitelist" of jurisdictions for which IP address connectivity is permitted to Defendants' network; (3) maintain and update a set of centralized information security protocols, including policies for the retention and destruction of patient information; (4) centralize storage of vendor contracts and conduct periodic audits of those contracts and the information security terms therein; (5) conduct periodic internal audits and assessments of Defendants' policies related to the Health Insurance Portability and Accountability Act, and ensure that each section of these policies is updated accordingly; (6) implement and utilize a comprehensive vulnerability management tool to conduct vulnerability scans and facilitate enterprise-wide patching; (7) continue integration of encryption management solution to ensure all workstations are properly encrypted; (8) maintain role-based

access controls for Defendants' patient management application; (9) integrate records stored on non-centralized servers into Defendants' patient management application, bringing legacy repositories under a central location; (10) implement and utilize endpoint detection response tool to facilitate endpoint protections and detection of malware; and (11) maintain annual cybersecurity awareness training requirements for employees.  These measures will provide additional protection to Plaintiffs and Settlement Class Members' PII in Defendants' possession. I am informed by Defendants that the good-faith estimate of the known, quantifiable costs of implementing and maintaining these data-security practices during the 3-year period is $3.22 million.

### The Notice and Claims Process

23.    Proposed Class Counsel request that the Court appoint Kroll, LLC ("Kroll") as the Claims Administrator to provide notice to Settlement Class Members and to process claims. The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure by giving direct summary postcard notice to the 1,945,788 Settlement Class Members via U.S. mail, with an attached "tear off" claim form with prepaid postage for those who wish to make claims that do not require documentation, *e.g.*, claims for Attested Time or Cash Payments. In addition, for all Settlement Class Members for whom Defendants can ascertain an email address from their records with reasonable effort,

Kroll will also email a copy of the Short Form Notice. S.A. ¶¶ 3.2.; 3.2.1. Kroll will also establish a Settlement Website, where pertinent documents will be posted and claim forms can be filed, and a dedicated Toll-Free Help Line. S.A. ¶¶ 3.2.3, 3.2.4. The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Notice and Claims Process is further described in the supporting declaration of Scott M. Fenwick attached to the Preliminary Approval Motion as Exhibit 3.

### *Attorneys' Fees and Expenses*

24.     Proposed Class Counsel will separately move the Court for an order awarding attorneys' fees not to exceed one third of the Settlement Fund ($900,000.00) and litigation costs and expenses in an amount not to exceed $25,000.00, to be paid from the Settlement Fund, and Defendants take no position on this request. S.A. ¶ 7.2. This was a separately negotiated provision of the Settlement Agreement, which was not discussed until after the Parties had agreed on relief to the Settlement Class. S.A. ¶ 7.1. Proposed Class Counsel believes this fee is justified given the class benefits generated through their skill and efforts, and when considered in light of the substantial monetary and nonmonetary benefits conferred on the Settlement Class.

25.     Proposed Class Counsel will also seek a Service Award of up to $2,500.00 for each Representative Plaintiff, who provided information concerning

the circumstances regarding the impact of the Data Security Incident that was vital to Proposed Class Counsel's investigation and litigation of the Settlement Class's claims. Furthermore, I am aware or otherwise informed that Representative Plaintiffs remained active in the case, communicating with their attorneys working on the case during subsequent phases of the case, including assisting with the initial, consolidated, and/or amended complaints and approving the settlement. Defendants, likewise, take no position on an application by Representative Plaintiffs for a service award not to exceed $2,500.00. *Id*. ¶ 7.3. The proposed service award does not misalign their interests with those of other class members but rather fairly compensates Plaintiffs for their services to the Settlement Class. Both the application for Attorneys' Fees and Expenses, and the application for Service Award will be filed at least 21 days before the Objection Deadline.

### *Releases*

26.     Upon the Effective Date, each Settlement Class Member, including Representative Plaintiffs, shall be deemed to have fully released Defendants, the Related Entities and the Released Persons from all Released Claims. S.A. ¶¶ 1.25, 1.26, 6.1. Proposed Class Counsel believes the releases are appropriately tethered to the claims that were presented in the litigation and therefore appropriate consideration in exchange for the substantial class relief provided by the Settlement.

### *The Settlement is Fair, Reasonable, and Adequate*

27.     The proposed settlement is a fair and adequate result. If approved, it

will deliver substantial relief specifically tailored to the types of harm often incurred

as a result of the Incident. Reimbursement for Ordinary Out-of-Pocket Losses and

Ordinary Attested Time and/or Extraordinary Losses, Cash Payments, and Non-SSN

Attested Time, which are all available under the Settlement, are the types of issues

that Proposed Class Counsel and Representative Plaintiffs sought to redress through

this litigation. Defendants' commitment to pay for, implement, and continue certain

data-security enhancements and business practices for a period of 3 years following

the execution of the S.A., *id.* ¶ 2.9, provides further value and comfort that more will

be done going forward to prevent additional breaches of Settlement Class Members'

personal information still held by Defendants.

28.     Based on Proposed Class Counsel's experience in other data breach

cases, the funds available to Class Members are tailored to address the losses

stemming from the Incident. When a victim incurs out-of-pocket expenses relating

to a data breach, it is typically associated with seeking advice about how to address

the breach (e.g., paying for professional services), paying incidental costs associated

with identity theft or fraud (e.g., overdraft fees or costs for sending documents by

certified mail), or taking mitigative measures like paying for credit monitoring or

credit freezes. As such, the ordinary out-of-pocket expenses associated with a data

breach are generally relatively modest, and rarely exceed several hundred dollars. When victims spend more than this amount, it is typically associated with paying for professional services such as accountant or attorneys' fees.

29.     The Settlement must also be viewed against the significant risks to Representative Plaintiffs had they continued to litigate the case. There was a risk that Representative Plaintiffs' claims would not have survived, or survived in full, on a class-wide basis.  Additional litigation would be complex, costly, and likely continue for several years with no guarantee of relief.  A settlement now allows class members to obtain relief without high administrative burdens.

30.     Based on the factual record and the briefing and argument on legal issues, Proposed Class Counsel believe the Settlement is in the best interests of the Settlement Class.

31.     Finally, there is no indication that there are any conflicts between the Representative Plaintiffs and the Settlement Class. Rather, Representative Plaintiffs' claims are substantially similar to the claims of the Settlement Class. Each of them was impacted by the Data Security Incident due to the unauthorized access to their personal information. Moreover, in crafting the Settlement, we took care to ensure that the relief was allocated commensurate to the value of each Settlement Class Member's respective claims—those that suffered a greater loss will be able to make a proportionately larger claim than those that did not.

32.     In light of the totality of the circumstances, the Court should conclude that the Settlement as described in the Settlement Agreement is fair, reasonable, and adequate and likely to achieve final approval, and therefore notice should issue to the class.

### *Appointment of Class Counsel*

33.     I respectfully submit that Proposed Class Counsel have diligently served the class in litigating this case and presenting this Settlement for initial approval requesting issuance of notice and therefore request that we be appointed as Class Counsel pursuant to Fed. R. Civ. P. Rule 23(g) for purposes of implementing this Settlement.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this Friday, June 28, 2024 in Tampa, Florida, United States of America.


*/s/ Patrick A. Barthle II*

Patrick A. Barthle II