THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In re Great Expressions Data Security Incident Litigation | Case No.: 2:23-cv-11185-JJCG-CI<br><br>**DECLARATION OF SCOTT M. FENWICK OF KROLL SETTLEMENT ADMINISTRATION LLC IN CONNECTION WITH PRELIMINARY APPROVAL OF SETTLEMENT** |

I, Scott M. Fenwick, hereby declare:

1. I am a Senior Director of Kroll Settlement Administration LLC ("Kroll"),[1] the proposed Claims Administrator to be appointed in the above-captioned case, whose principal office is located at 2000 Market Street, Suite 2700, Philadelphia, Pennsylvania 19103. I am over 21 years of age and am authorized to make this declaration on behalf of Kroll and myself. The following statements are based on my personal knowledge and information provided by other experienced Kroll employees working under my general supervision. This declaration is being filed in connection with preliminary approval of the settlement.

2. Kroll has extensive experience in class action matters, having provided services in class action settlements involving antitrust, securities, labor and employment, consumer and government enforcement matters. Kroll has provided class action services in over 3,000 settlements varying in size and complexity over the past 50 years.

3. Kroll is prepared to provide a full complement of notification and Claims Administration services in connection with that certain Settlement Agreement entered into this Litigation, including dissemination of the Notice by email, mail, and through the use of a

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Agreement entered into in this Litigation.

settlement website to be created in connection with this matter. The claims process draws upon best industry standards to facilitate participation, including the ability to submit Claim Forms electronically through the dedicated settlement website in addition to submission by mail. Kroll has successfully administered high-profile, complex settlements across diverse industries, many involving fraud loss reimbursement or complex regulatory considerations, and has the experience and capability to handle a case of this magnitude.

4. It is Kroll's understanding that it will be provided with a list of Settlement Class Members covered under the Settlement Agreement, and the Settlement Class Member list is to contain a combination of names, addresses, email addresses, and other data elements pertinent to the administration of the settlement. Pursuant to paragraph 3.2.1 of the Settlement Agreement, for any Settlement Class Member record provided by Defendants' counsel that does not contain a physical address, Kroll will use reasonable efforts to identify a physical address for such Settlement Class Member.

### CAFA Notice

5. On behalf of the Defendants, Kroll will provide notice of the proposed settlement pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(b) (the "CAFA Notice"). At Defendants' counsel's direction, Kroll will send the CAFA Notice, which identifies how to access required documents relating to the settlement, via first-class certified mail to (a) the Attorney General of the United States; and (b) the applicable state Attorneys General. The CAFA Notice will direct the recipients to the website www.CAFANotice.com, a site that will contain all the documents relating to the settlement referenced in the CAFA Notice.

### Notice by Email

6. In preparation for disseminating Short Form Notices by email ("Email Notice"), Kroll will work with Proposed Class Counsel and Defendants' counsel (collectively, "Counsel") to finalize the language for the Email Notice. Once the Email Notice is approved, Kroll will create an Email Notice template in preparation for the email campaign. Kroll will prepare a file with all available Settlement Class Member email addresses and upload the file to an email campaign

platform. Kroll will prepare email proofs for Counsel's review and final approval. The proofs/test emails for approval will include the body of the email and subject line. Once the proofs/test emails are approved, the email campaign will begin as directed in the Settlement Agreement.

7. Kroll will track and monitor emails that are rejected or "bounced back" as undeliverable. At the conclusion of the email campaign, Kroll will provide a report with the email delivery status of each record. The report will include the number of records that had a successful Email Notice delivery, and a count of the records where delivery failed. Kroll will also update its administration database with the appropriate status of the email campaign for each of the Settlement Class Member records.

## Notice by Mail

8. Kroll will work with Counsel to format the Short Form Notice for mailing ("Mail Notice"). Upon approval, Kroll will coordinate the preparation of Mail Notice proofs for Counsel's review and final approval.

9. As required under paragraph 3.2.1 of the Settlement Agreement, Kroll will send the Mail Notice by first-class mail to the physical addresses of Settlement Class Members who have a physical mailing address in the Settlement Class Member data to be provided by Defendants' counsel or otherwise identified through Kroll's reasonable efforts to locate such addresses.

10. Mail Notices will be sent by first-class mail to all physical addresses as noted above. In preparation for the Mail Notice mailing, Kroll will send the Settlement Class Member data through the United States Postal Service's ("USPS") National Change of Address ("NCOA") database. The NCOA process will provide updated addresses for Settlement Class Members who have submitted a change of address with the USPS in the last 48 months, and the process will also standardize the addresses for mailing. Kroll will then prepare a mail file of Settlement Class Members that are to receive the Mail Notice via first-class mail.

11. As directed by Counsel, Mail Notices returned by the USPS with a forwarding address will be automatically re-mailed to the updated address provided by the USPS.

DECLARATION OF SCOTT M. FENWICK IN CONNECTION WITH PRELIMINARY APPROVAL

12. As directed by Counsel, Mail Notices returned by the USPS undeliverable as addressed without a forwarding address will be sent through an advanced address search process in an effort to find a more current address for the record. If an updated address is obtained through the advanced search process, Kroll will re-mail the Mail Notice to the updated address.

13. The Notice Program as outlined in the Settlement Agreement and as expected to be implemented by Kroll contemplates a robust list of Settlement Class Members to be provided by Defendants' counsel that will allow for direct Notice to reach the vast majority of Settlement Class Members through direct mail and email. Based upon information provided by Counsel, and assuming data received is relatively up to date, Kroll estimates an average undeliverable rate of no more than 9% and thus projects direct Notice will likely reach 90% of the likely proposed Settlement Class Members. These assumptions are subject to the accuracy and quality of the data received. The reach rate is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines, which state that a notice plan that reaches over 70% of target class members is considered a high percentage and the "norm" of a notice campaign.[2]

**Settlement Website**

14. Kroll will work with Counsel to create a dedicated settlement website. The settlement website URL will be determined and approved by Counsel. The settlement website will contain a summary of the settlement, will allow Settlement Class Members to contact the Claims Administrator with any questions or changes of address, provide notice of important dates such as the Final Fairness Hearing, Claims Deadline, Objection Date, and Opt-Out Date, and provide Settlement Class Members who file Claim Forms online the opportunity to select an electronic payment method, including Venmo, Zelle, Paypal, ACH, or payment by check. The settlement website will also contain relevant case documents including the Settlement Agreement, the Long Form Notice, the Claim Form, and the Preliminary Approval Order, and the website will allow Settlement Class Members to submit a Claim Form online.

---

[2] Barbara Rothstein and Thomas Willging, Federal Judicial Center Managing Class Action Litigation: A Pocket Guide for Judges, at 27 (3d Ed. 2010).

**Toll-Free Telephone Number**

15. Kroll will also establish a toll-free telephone number for the settlement. The toll-free telephone number will allow Settlement Class Members to call and obtain information about the settlement through an Interactive Voice Response ("IVR") system and will have the ability to leave a voice message and receive a call back from a live operator. Settlement Class Members may also request copies of the Long Form Notice and Claim Form, as well as the Settlement Agreement.

**Post Office Box**

16. Kroll will designate a post office with a mailing address captioned *Great Expressions Data Security Incident* (or a name similar), c/o Kroll Settlement Administration LLC, PO Box ####, New York, NY 10150-####, in order to receive requests for exclusion, Claim Forms, and correspondence from Settlement Class Members.

**Administration Cost**

17. Based on Kroll's current understanding of the Settlement Class size and requested notification and Claims Administration services, estimated Costs of Claims Administration are approximately $931,538 for fees, costs and other expenses incurred for notification and Claims Administration pursuant to the Settlement Agreement. The current estimate is subject to change depending on factors such as the actual Settlement Class size and/or any notification or Claims Administration scope change not currently under consideration.

I declare under penalty of perjury under the laws of the United States that the above is true and correct to the best of my knowledge and that this declaration was executed on June 28, 2024, in Inver Grove Heights, Minnesota.

*[signature]*

Scott M. Fenwick