**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re Great Expressions Data Security Incident Litigation | Case No.: 2:23-cv-11185-JJCG-CI<br><br>Hon. Jonathan J.C. Grey |

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Representative Plaintiffs Vanessa Brito, Crystal Coffey, Jacqueline Williams, Aprill Denson, as next friend of C.D., a minor, and James D. Patterson ("Plaintiffs"), on behalf of themselves and all others similarly situated, move for entry of an order granting final approval of this proposed class action settlement and certifying the settlement class. For the reasons set forth below, Plaintiffs respectfully request that the Court, after the final approval hearing scheduled for December 12, 2024, grant this motion, grant Plaintiffs' Motion for Attorney Fees, Expenses, and Service Award, and enter a final judgement dismissing this case. This motion is supported by the Brief contained herein. The Parties have conferred, and Defendants do not oppose the final approval of the settlement requested herein, however, Defendants take no position on the separately filed fee and expense motion.

Dated: November 20, 2024

Respectfully Submitted,

1

*/s/ Joseph M. Lyon*

Joseph M. Lyon
THE LYON FIRM
2754 Erie Avenue
Cincinnati, OH 45208
Tel: (513) 381-2333
Fax: (513) 766-9011
Email: jlyon@thelyonfirm.com

Patrick A. Barthle II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

*Attorneys for Plaintiffs and Proposed Class*

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| In re Great Expressions Data Security Incident Litigation | Case No.: 2:23-cv-11185-JJCG-CI<br><br>Hon. Jonathan J.C. Grey |

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION
OF SETTLEMENT CLASS**

i

## <u>Concise Statement of the Issues Presented</u>

1.     Whether the Court should finally approve the Parties' proposed class action settlement and enter the order proposed by the Parties certifying the settlement class.

## <u>Controlling or Most Appropriate Authority for the Relief Sought</u>

***Authority supporting that the Court should finally approve the Parties' proposed class action settlement and enter the order proposed by the Parties certifying the settlement class***

<u>In re Great Expressions Data Security Incident Litigation</u>, No. 2:23-cv-11185-JJCG-CI, ECF No. 34 (E.D. Mich. July 2, 2024) (Grey, J.) (Order Granting Motion for Preliminary Approval)

<u>Does 1-2 v. Deja Vu Servs., Inc.</u>, 925 F.3d 886, 894 (6th Cir. 2019)

<u>Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.</u>, 497 F.3d 615, 631 (6th Cir. 2007)

<u>Thomsen v. Morley Companies, Inc.</u>, 639 F. Supp. 3d 758 (E.D. Mich. 2022)

## I.     <u>INTRODUCTION</u>

Following dispositive motion practice, the exchange of informal discovery, and a full day of in-person mediation, the Parties[1] reached a settlement to resolve claims arising from a Data Security Incident that Defendants experienced in February 2023. The settlement creates a non-reversionary common fund of $2,700,000 for the benefit of approximately 1,945,788 individuals,[2] including (i) reimbursement for Ordinary Out-of-Pocket Losses and Ordinary Attested Time for SSN Subclass Members; (ii) reimbursement for Extraordinary Losses for SSN Subclass Members; (iii) Cash Payments for SSN Subclass Members; and (iv) reimbursement for Attested Time for Non-SSN Subclass Members. Subject to the Court's approval, the Settlement Fund will also pay for a notice and administration program, service awards for Plaintiffs, and attorneys' fees and expenses. Further, as part of the settlement, Defendants commit to pay for, implement, and continue certain data-security practices.

---

[1] The parties to the settlement are the employee and patient Settlement Class Representatives, on behalf of the proposed Settlement Class, and Defendants ADG, LLC d/b/a Great Expressions Dental Centers ("ADG") and Great Expressions Dental Centers, P.C. ("GEDC") (collectively, "Defendants"). Capitalized terms used in this Brief have the same meaning as in the Settlement Agreement ("S.A.") (ECF No. 33-1).

[2] In the Motion for Preliminary Approval and Settlement Agreement the Parties identified a class size of approximately 1,945,788 individuals (ECF No. 33 at Page.ID 409), however, as explained in the declaration of the claims administrator, after data analysis of the class list, the data indicated 1,819,773 unique records for purposes of direct notice.

At this time, the Claims Administrator has determined that 41,950 timely and valid claims were submitted. Based on a class size of 1,945,788 Settlement Class Members, this is a claims rate of 2.16%. The payment to each SSN Subclass claimant is estimated at $83.83, an exceptional result in a data breach case, and the payment to each Non-SSN Subclass member is estimated to be $12.93.

This settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case, while balancing the risks of future litigation, and considering the time value of present compensation. The settlement is fair, reasonable, adequate, and meets the requirements of Rule 23(e). Plaintiffs thus move for an order finally approving the settlement and certifying the Settlement Class.[3] In support, Plaintiffs submit the declaration of co-Class Counsel Patrick A. Barthle II ("Barthle Decl.") (Ex. 1 hereto); and the declaration of Patrick M. Passarella, Esq. on behalf of Claims Administrator Kroll, LLC ("Kroll") ("Passarella Decl.") (Ex. 2 hereto).

## II.     FACTUAL BACKGROUND

### A. Overview of the Litigation

Between February 17 and February 22, 2023, Defendants experienced a Data

---

[3] A Proposed Final Approval Order was submitted with the Motion for Preliminary Approval, as Exhibit E to the Settlement Agreement, having been previously filed at ECF 33-1 at Page.ID 525-532. Following submission of this motion, Plaintiffs will submit the proposed order in Word via the Court's ECF Utility.

Security Incident that impacted some of their IT systems. After an investigation, Defendants determined that a threat actor potentially accessed certain records containing personal information pertaining to current and former employees and patients of Defendants' customers/licensees, including (1) for employees: names, Social Security numbers, driver's license numbers, passport numbers, and/or bank account and routing number and (2) for patients, in various combinations: patient names, dates of birth, contact information, mailing addresses, Social Security numbers, driver's license numbers, financial account information, credit or debit card numbers, diagnosis and treatment information, medical and dental history, dental examination information, charting information, treatment plans, x-ray images, dates of service, provider names, GEDC office of treatment, billing records, costs of services, prescription information and/or health insurance information. On or around May 12, 2023, Defendants began notifying individuals potentially impacted by the Data Security Incident.

On May 18, 2023, Plaintiff Brito filed a Class Action Complaint in this Court. Plaintiffs Coffey, Denson, and Williams subsequently filed cases that were consolidated with Plaintiff Brito's case. On August 28, 2023, Plaintiffs filed a consolidated Class Action Complaint. On October 9, 2023, Defendants moved to Dismiss the Complaint. Prior to the Court ruling on the motion, the Parties agreed to mediate their dispute and jointly requested a stay pending mediation. On May 15,

2024, the Parties stipulated to the addition of Plaintiff Patterson as a plaintiff in this action and Plaintiffs filed their First Amended Consolidated Complaint ("FAC").

On March 21, 2024, the Parties participated in an in-person mediation session facilitated by experienced mediator, Bennett G. Picker, in Palm Beach, Florida. After a full day of negotiations, and upon the Parties' acceptance of the mediator's recommendation as to the monetary amount of the settlement, the Parties reached an agreement in principle on a $2,700,000.00 Settlement Fund. Over the next three months, the Parties continued to negotiate additional terms and on June 27, 2024, executed the Settlement Agreement.

## B. The Terms of the Proposed Settlement

### 1.    The Settlement Class

The proposed Settlement Class is defined as: all individual U.S. residents to whom Defendants sent notice that their PII was potentially impacted in the Data Security Incident. S.A. ¶ 1.29.[4] Defendants represent that the Settlement Class contains approximately 1,945,788 individuals. *Id.* Importantly, the Settlement Class

---

[4] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendants; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Data Security Incident or who pleads nolo contendere to any such charge. *Id.*

4

is made up of two, distinct, subclasses: (1) the "SSN Subclass," which contains approximately 42,926 individuals whose Social Security numbers were potentially impacted in the Data Security Incident (S.A. ¶ 1.32); and (2) the "Non-SSN Subclass," containing approximately 1,902,862 individuals whose Social Security numbers were not potentially impacted in the Data Security Incident, (S.A. ¶ 1.14). As set out below, the relief available to each of the subclasses reflects the difference in the sensitivity of information involved in the Data Security Incident and the corresponding difference in the value of claims for each subclass.

### 2.    The Settlement Fund

Defendants have paid $2,700,000.00 into the Settlement Fund for class benefits, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court. *Id.* ¶ 2.1. If the Court orders final approval of the settlement, this sum will be used entirely for the benefit of the Settlement Class and their representatives—no proceeds will revert to Defendants. *Id.* ¶¶ 2.1, 2.4, 7.5. After the Court's preliminary approval order was entered (ECF No. 34), Settlement Class Members were permitted to submit claims for the following specific benefits:

- **<u>SSN Subclass Reimbursement for Ordinary Out-of-Pocket Losses and Ordinary Attested Time.</u>** SSN Subclass Members were permitted to submit a claim of up to $500 per individual for Ordinary Out-of-Pocket Losses and Ordinary Attested Time. S.A. ¶ 2.2. "Ordinary" Out-of-Pocket Losses are unreimbursed costs, losses, or expenditures incurred by a Class member in responding to notice of the Data Security Incident that were

5

incurred between February 17, 2023 and the Claims Deadline. *Id.* ¶ 2.2.1.Whether or not they incurred "Ordinary" Out-of-Pocket Losses, SSN Subclass Members were also permitted to submit a claim for up to two hours of time spent responding to receiving notice of the Data Security Incident at a rate of $20 per hour by providing an attestation and a brief description of: (1) the actions taken in response to receiving notice of the Data Security Incident; and (2) the time associated with each action ("Ordinary Attested Time"). *Id.* ¶ 2.2.3.

- **SSN Subclass Reimbursement for Extraordinary Losses.** In addition to submitting a claim for Ordinary Out-of-Pocket Losses, SSN Subclass Members who believed they had suffered identity theft, fraud, or other extraordinary losses could submit a claim for Extraordinary Losses and Attested Time up to $5,000 per individual. S.A. ¶ 2.3. "Extraordinary Losses" are unreimbursed costs, losses, or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Security Incident, and are costs, losses, or expenditures that are not reimbursable as Ordinary Out-of-Pocket Losses. Extraordinary Losses included, without limitation, the unreimbursed costs, losses, or expenditures incurred as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the SSN Subclass Member's personal information. *Id.* ¶ 2.3.1.

- **SSN Subclass Cash Payment.** In addition to, or in the alternative to, making Claims for Ordinary Out-of-Pocket Losses and Ordinary Attested Time and/or Claims for Extraordinary Losses, SSN Subclass Members could also elect to receive a cash payment of up to $500 on a claims-made basis. *Id.* ¶ 2.6. Cash Payments for SSN Subclass Members are subject to an aggregate cap of $300,000. If the aggregate amount of Cash Payments for SSN Subclass Members exceeds $300,000, such payments will be decreased *pro rata* to total $300,000. If the aggregate amount of Cash Payments to SSN Subclass Members is less than $300,000, the remainder will be used to pay the claims for attested time by the Non-SSN Subclass Members. *Id.* ¶ 2.6.

- **Non-SSN Subclass Reimbursement for Attested Time.** Non-SSN Subclass Members were permitted to submit a claim for up to 2 hours of time spent remedying issues related to the Data Security Incident at a rate of $20 per hour by providing an attestation and a brief description of: (1) the actions taken in response to the Data Security Incident; and (2) the time

6

associated with each action ("Non-SSN Attested Time"). *Id.* ¶ 2.7. If the aggregate amount of Approved Claims for Non-SSN Attested Time by Non-SSN Subclass Members exceeds the remaining amount of the Settlement Fund (after payment of Approved Claims for Ordinary Out-of-Pocket Losses and Ordinary Attested Time, Approved Claims for Extraordinary Losses, Cash Payments, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court), such claims will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. If the aggregate amount of Approved Claims for Non-SSN Attested Time by Non-SSN Subclass Members is less than the remaining amount of the Settlement Fund, such claims will be increased *pro rata* to consume the remaining amount of the Settlement Fund or up to $80 per claim, whichever occurs first. Any remainder will be used to increase the Cash Payments for SSN Subclass Members *pro rata*. *Id.*

Pursuant to the Court's preliminary approval order, Settlement Class Members seeking any of these benefits were required to complete and submit either a written or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. *Id.* ¶ 2.8.2. For Claims for Ordinary Out-of-Pocket Losses and Claims for Extraordinary Losses, the claimants were required to provide documentation supporting their claim (*id.* ¶¶ 2.2.2, 2.3.2).

If there is no final approval of the settlement, the amount remaining in the Settlement Fund will be returned to Defendants. *Id.* ¶ 9.3.

### 3.     Proposed Injunctive Relief—Data Security Commitments

In addition to the monetary consideration, for a period of three years following the execution of the Settlement Agreement, Defendants commit to pay for,

7

implement and continue certain data security practices, which are specified in the Settlement Agreement. *Id.* ¶ 2.9. These measures will provide additional protection to Plaintiffs and Settlement Class Members' PII in Defendants' possession.

### 4. Preliminary Approval, Notice, Objections and Exclusions, and Submitted Claims

#### a. Preliminary Approval

On June 28, 2024, Plaintiffs moved the Court to grant preliminary approval of the settlement, approve the proposed Notice Plan, direct notice to be given to the Settlement Class, and Schedule a Final Approval Hearing. (ECF No. 33). On July 2, 2024, the Court granted Plaintiffs' motion. (ECF No. 34).

#### b. Notice

Pursuant to the Preliminary Approval Order, the Settlement Administrator implemented the Notice Plan, disseminating direct notice to 1,819,773 Settlement Class Members via U.S. mail, and, in approximately 600,000 instances, email as well. *See* Passarella Decl. ¶¶ 9-11. Notice was also provided via an Internet website. *Id.* ¶ 6.

The Notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Defendants; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the

option to do nothing and not receive a monetary payment from the Settlement. (ECF No. 33-1, PageID. 502-10).

### c.   Objections and Exclusions

The deadline for Settlement Class Members to exclude themselves or object to the proposed Settlement passed on October 11, 2024, (ECF No. 34, PageID. 575), and only 74 exclusion requests have been received to date, while no objections have been received. Passarella Decl. ¶ 23.

### d.   Submitted Claims

The claims deadline was November 8, 2024, and approximately 41,950 timely and valid claims have been received to date. *Id.* ¶¶ 15-19. The claims received to date include (i) 4,116 SSN Subclass Cash Payment claims; (ii) 10 SSN Subclass Extraordinary Out of Pocket Claims; (iii) 932 SSN Subclass Out-of-Pocket Loss claims; (iv) 869 SSN Subclass Ordinary Attested Time claims; and (v) 29,780 Non-SSN Subclass Attested Time claims. *Id.* ¶ 19.

As discussed in Plaintiffs' Motion for Service Award, Attorney's Fees, and Expenses (ECF No. 37), the "common fund" settlement obtained for Plaintiffs and Settlement Class Members is a favorable result for a data breach settlement, particularly a cyberattack case with no statutory damages available to the Settlement Class Members.

Specifically, the vast majority of the Settlement Class, the "Non-SSN

Subclass," which contains approximately 1,902,862 individuals whose Social Security numbers were *not* potentially involved in the Data Security Incident, (S.A. ¶ 1.14), had significant challenges in demonstrating compensable damages for purposes of their claims on a class-wide basis. Yet, the Settlement provides real, reasonable, and substantial relief for these individuals in the form of payment for time spent remedying issues related to the Data Security Incident, by submitting a claim for up to two hours of time spent at a rate of $20 per hour via an attestation and a brief description.  S.A. ¶ 2.7.

Meanwhile, the "SSN Subclass," which contains approximately 42,926 individuals whose Social Security numbers *were* potentially accessed or acquired during the Data Security Incident (S.A. ¶ 1.32); and thus have stronger class-wide damages and claims, are eligible to receive (1) up to $500 per individual for Ordinary Out-of-Pocket Losses and Ordinary Attested Time, S.A. ¶ 2.2; (2) up to $5,000 for Extraordinary Losses and Attested Time related to identity theft, fraud, or other extraordinary losses, S.A. ¶ 2.3; and (3) in addition to, or in the alternative to, making Claims for Ordinary and/or Extraordinary Losses, SSN Subclass Members may elect to receive a cash payment of up to $500 on a claims-made basis (subject to an aggregate cap), S.A. ¶ 2.6.

Rather than facing additional litigation that would be complex, costly, and likely continue for several years with no guarantee of relief, the Settlement provides

10

real benefits and real relief to the Settlement Class, thus weighing in favor of applying the percentage-of-the-fund method.

Based on current claims data—and assuming $931,538 for notice and administration; the full fee, costs, and service award requested of $900,000 in fees, $25,000 in costs, and service awards of $2,500 per Representative Plaintiff ($12,500 total) are awarded—the aggregate payout to SSN Subclass Members will be $83.83 per person, and to Non-SSN Subclass Members will be $12.93.

The average claims rate of **2.16%** as of November 18, 2024, further confirms the quality of the result obtained for the class. Courts throughout the country have found far lower claims rates sufficient in the data breach context, including as follows:

- *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (finding 1.6% claims rate "in line with claims rates in other data breach class action settlements that courts have approved") (collecting cases);

- *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023) (finding 0.66% claims rate "within the acceptable range for final approval");

- *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) ("A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions.").

- *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (0.83% claims rate);

- *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% claims rate);

- *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), aff'd, 892 F.3d 968 (8th Cir. 2018) (0.23% claims rate)).

### III.   ARGUMENT

In *Thomsen v. Morley Companies, Inc.*, 639 F. Supp. 3d 758 (E.D. Mich. 2022), another data breach case, Judge Ludington thoroughly laid out the criteria for approving a class action settlement in the data breach context.[5] Plaintiffs rely on Judge Ludington's Order throughout this motion as it offers guidance particularly useful in the data breach context, including as follows:

> The claims of "a class proposed to be certified for purposes of settlement[ ] may be settled, voluntarily dismissed, or compromised only with the court's approval."[6]
>
> The question at the preliminary-approval stage is "simply whether the settlement is fair enough" to begin the class-notice process.[7] At the preliminary-approval stage, Rule 23(e) requires the parties to "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class."[8] "The court must direct notice" of a proposed settlement "to all class members who would be bound" by it if "the court will likely be able to approve the proposal under Rule 23(e)(2)[ ] and certify the class for purposes of judgment on

---

[5] Judge Ludington's analysis was recently applied in another data breach case in this District where final approval was granted. *See Hummel v. Teijin Automotive Techs.*, No. 23-cv-10341 (E.D. Mich. Sept. 24, 2024) (Leitman, J.) (ECF No. 33).

[6] *Thomsen*, 639 F. Supp. 3d at 764 (quoting Fed. R. Civ. P. 23(e)).

[7] *Id*. (quoting *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020)).

[8] *Id*. (quoting Fed. R. Civ. P. 23(e)(1)(A)).

the proposal."[9]

At final approval, Judge Ludington explained that "[a]fter preliminary approval, notice, and time for objections, the proposed settlement may be finally approved 'only after a hearing and only on finding that it is fair, reasonable, and adequate' based on the review of seven factors." 2023 WL 3437802, at *1 (E.D. Mich. May 12, 2023) (citing Fed. R. Civ. P. 23(e)(2)). Finding that it had "already determined that all but one factor [for final approval] have been satisfied," the Court deemed it necessary only to "determine whether the reaction of absent class members warrants approval of the Agreement." *Id.* (citing 2022 WL 16708240).

## A. Rule 23 Class Certification

### 1. Rule 23(a) requirements

#### i. Numerosity

"The Class must be 'so numerous that joinder of all members is impracticable.'" *Morley Cos.*, 639 F. Supp. 3d at 765 (quoting Fed. R. Civ. P. 23(a)(1)). "Although 'there is no strict numerical test, substantial numbers usually satisfy the numerosity requirement.'" *Id.* (quoting *Daffin v. Ford. Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006)). In the Preliminary Approval Order, the Court concluded that the Settlement Class of approximately 1,945,788 individuals "is so numerous that joinder of all Settlement Class Members would be impracticable."

---

[9] *Id*. (quoting Fed. R. Civ. P. 23(e)(1)(B)).

Preliminary Approval Order (ECF No. 34 PageID.562). Accordingly, the Numerosity prong of Rule 23(a) is satisfied.

### ii. Commonality

"The Class must share common questions of law or fact." *Morley Cos.*, 639 F. Supp. 3d at 765 (citing Fed. R. Civ. P. 23(a)(2)). "Commonality requires 'a common contention' that, if resolved, would resolve claims of all class members 'in one stroke.'" *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "A common question of law or fact exists if all the Class's members suffered the same injury." *Id.* (citing *Dukes*, 564 U.S. at 349-50). In the Preliminary Approval Order, the Court found that "there are issues of law and fact that are common to the Settlement Class." (ECF No. 34 PageID. 562). Nothing has occurred in the interim to disturb this conclusion. The commonality prong of Rule 23(a) is satisfied.

### iii. Typicality

"'[T]he claims or defenses of the representative parties [must be] typical of the claims and defenses of the class.'" *Morley Cos.*, 639 F. Supp. 3d at 765 (quoting Fed. R. Civ. P. 23(a)(3)). "Typicality is satisfied if the representative's claim 'arises from the same [transaction or occurrence as] the claims of other class members, and [they] are based on the same legal theory.'" *Id.* (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)). In the Preliminary Approval Order, the Court concluded that "the claims of the Representative Plaintiffs are typical of and arise

14

from the same operative facts and seek similar relief as the claims of the Settlement

Class Members." (ECF No. 34 PageID. 562). Nothing has occurred in the interim to

disturb this conclusion. The typicality prong of Rule 23(a) is satisfied.

### iv.  Adequacy of representation

"Finally, 'the representative parties [must] fairly and adequately protect the

interest of the class.'" *Morley Cos.*, 639 F. Supp. 3d at 765-66 (quoting Fed. R. Civ.

P. 23(a)(4)). "Adequacy is governed by two criteria: '1) the representative must have

common interests with unnamed members of the class, and 2) it must appear that the

representatives will vigorously prosecute the interests of the class through qualified

counsel.'"[10] In the Preliminary Approval Order, the Court concluded that "the

Representative Plaintiffs will fairly and adequately protect the interests of the

Settlement Class as the Representative Plaintiffs have no interests antagonistic to or

in conflict with the Settlement Class and has retained experienced and competent

counsel to prosecute this matter on behalf of the Settlement Class." (ECF No. 34

PageID. 562). Nothing has occurred in the interim to disturb this conclusion. Thus,

the adequacy prong of Rule 23(a) is satisfied.

### 2.  Rule 23(b) requirements

In addition to the Rule 23(a) requirements, "the Class must also satisfy one of

---

[10] *Id.* at 765-66 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996)).

the three requirements of Rule 23(b)." *Morley Cos.*, 639 F. Supp. 3d at 766 (citing *Dukes*, 564 U.S. at 345). "Rule 23(b)(3) … permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy." *Id.* (citing Fed. R. Civ. P. 23(b)(3)).

### i.   Common questions of law or fact predominate

"Predominance is satisfied if the Class's individual questions of law or fact 'are sufficiently cohesive to warrant adjudication by representation.'"[11] In the Preliminary Approval Order, the Court concluded that "questions of law or fact common to the Settlement Class predominate over any questions affecting only individual members." (ECF No. 34 PageID. 562). Nothing has occurred in the interim to disturb this conclusion. Thus, the first requirement of Rule 23(b)(3) is met.

### ii.   The class action is the superior method to adjudicate the controversy fairly and effectively

"Superiority 'is met if the class action is a better way than individual litigation to adjudicate a claim.'"[12] "A class action is superior if it would 'vindicate[ ] the rights of groups of people who individually would be without effective strength to bring

---

[11] *Id.* (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997)).

[12] *Thomsen*, 639 F. Supp. 3d at 766 (quoting *Calloway v. Caraco Pharm. Lab'ys*, 287 F.R.D. 402, 407 (E.D. Mich. 2012)).

16

their opponents into court at all.'"[13] In the Preliminary Approval Order, the Court concluded that "a class action and class settlement is superior to other methods available for a fair and efficient resolution of this controversy." (ECF No. 34 PageID. 562). Nothing has occurred in the interim to disturb this conclusion. Thus, the second and final requirement for Rule 23(b)(3) is met.

### 3.  Rule 23(e) Factors

Rule 23(e)(2) provides that a proposed settlement may be approved only after a hearing and on a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Approval of a proposed settlement is committed to the sound discretion of the court. *See Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 894 (6th Cir. 2019).

> Four factors govern whether the Agreement is 'fair, reasonable, and adequate': (1) whether the class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats class members equitably relative to each other.

*Morley Cos.*, 639 F. Supp. 3d at 767-68.

### i.  Adequate representation

Plaintiffs have the same claims as other class members and have actively participated in the case by working with proposed class counsel in preparing the initial complaint and First Amended Consolidated Complaint and in approving the

---

[13] *Id.* (quoting *Amchem*, 521 U.S. at 617).

settlement. Barthle Decl. ¶ 9. In the Preliminary Approval Order, the Court concluded that "the Representative Plaintiffs will likely satisfy the requirements of Rule 23(e)(2)(A)." (ECF No. 34 PageID. 563). Nothing has occurred in the interim to disturb this conclusion. Barthle Decl. ¶ 9.

### ii.   Arm's length negotiation of settlement

The parties mediated this case before a neutral mediator, Bennett G. Picker, and accepted the mediator's recommendation as to the monetary amount of the settlement. Before mediation, Defendants produced information related to (i) when Defendants learned of the Data Security Incident, (ii) when the Data Security Incident commenced and ended, (iii) the location of the dataset that contained information related to impacted individuals, (iv) the nature of the relationship(s) between potentially impacted individuals and Defendants, (v) the data elements potentially impacted, (vi) the geographic locations by state of potentially impacted individuals, and (vii) the number of potentially impacted individuals who enrolled in complimentary identity monitoring services that Defendants offered in the notice of the Data Security Incident. Barthle Decl. ¶¶ 2-3. This satisfies the requirement that the settlement be negotiated at arm's length.[14]

---

[14] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 768 ("The parties negotiated the Agreement at arm's length. After conducting informal discovery, the parties settled through a neutral mediator …, and there is no evidence of fraud or collusion. Therefore, the second factor is satisfied.") (citations omitted).

### iii.   Adequate relief

Additional litigation would be complex, costly, and likely continue for several years with no guarantee of relief. Barthle Decl. ¶ 6. A settlement now allows Settlement Class Members to obtain relief without high administrative burdens. *Id.* In the Preliminary Approval Order, the Court found that "the settlement is fair, reasonable, and adequate . . . ." (ECF No. 34 PageID. 563). Further, in making this determination, "the Court [] considered the benefits to the Settlement Class, the specific risks faced by the Settlement Class in prevailing on Plaintiffs' claims, the stage of the proceedings at which the settlement was reached, the effectiveness of the proposed method for distributing relief to the Settlement Class, the proposed manner of allocating benefits to Settlement Class Members, and all other factors required by Rule 23." Nothing has occurred in the interim to disturb this conclusion.

### iv.   Equal treatment of class members

"The Agreement must treat the members of the Class as relatively equal." *Id.* SSN Subclass Members may obtain (i) a Cash Payment up to $500 and (ii) reimbursement for Ordinary Out-of-Pocket Losses and Ordinary Attested Time and/or Extraordinary Losses. Non-SSN Subclass Members may obtain reimbursement for Non-SSN Attested Time. The greater relief afforded to SSN Subclass Members reflects the fact that their SSNs—the information required for most types of identity fraud were potentially impacted in the Data Security Incident.

19

Finally, a $2,500 service award for each Plaintiff who brought this suit does not raise concerns about inequality.[15]

### 4. Sixth Circuit Factors.

"In addition to the Rule 23(e) factors, courts in this district must also consider the seven factors prescribed by the Sixth Circuit to evaluate a proposed settlement agreement. *Id.* (citing *Garner Properties & Mgmt., LLC v. City of Inkster*, No. 17-CV-13960, 2020 WL 4726938, at *8 (E.D. Mich. Aug. 14, 2020)).

> Those factors include: (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest."

*Id.* at 419-20 (citing *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

### i. The risk of fraud or collusion

---

[15] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 768 ("The Agreement must treat the members of the Class as relatively equal. The Agreement does so. It permits each member of the Class to receive the 'automatic benefit' of a three-year extension of identity monitoring. It also provides a form for each member of the Class to obtain 'Claimed Benefits,' including (1) out-of-pocket expenses, (2) lost-time claims, (3) California claims, (4) credit monitoring, and (5) password-management services. Such a system ensures the apportionment of relief among class members takes appropriate account of differences among their claims and injuries, thus satisfying equal treatment. And lead Plaintiffs' incentive award is only $1,500.00, so there are no concerns about the incentive award creating inequality.") (citations omitted).

"'Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.'"[16] The Court can safely conclude this settlement was negotiated at arm's length, without collusion, based on the terms of the settlement itself; the length and difficulty of the negotiations; and the involvement of an experienced mediator, Bennett G. Picker. The Court found no risk of fraud or collusion when granting preliminary approval, and nothing has changed since.[17]

### ii.  The complexity, expense, and likely duration of the litigation

"Courts must also consider the complexity, expense, and likely duration of litigation because 'the costs, delays[,] and multitudes of other problems' can outweigh the value of the plaintiff's claims." *Id.* Plaintiffs face significant risks and costs should they continue to litigate the case through motion practice, trial, and potential appeals. Further, if Plaintiffs prevailed on their intended motion for class certification and successfully defeated Defendants' intended motions thus proceeding to trial, Plaintiffs would have faced significant risk, cost, and delay. Plaintiffs face the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation.

---

[16] *Morley Cos.*, 639 F. Supp. 3d at 769 (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008)).

[17] *See, e.g.*, *id.* ("No evidence of fraud or collusion exists here. On the contrary, the parties settled with a neutral mediator so this factor favors approval.") (citations omitted).

In contrast to the risks, costs, and delay posed by continued litigation and potential trial, the proposed Settlement provides certain, substantial, and immediate relief to the Settlement Class. It ensures that Settlement Class Members who submitted valid Claims will receive guaranteed benefits now. It also requires injunctive relief that will help protect Settlement Class Member data from potential subsequent exposure. The substantial costs, risks, and delay of a trial and appeal support a finding that the proposed Settlement is adequate.[18]

### iii.  The amount of discovery engaged in by the parties

"A settlement is 'more likely to be fair and reasonable under the circumstances' if the parties have conducted discovery."[19] Although the Parties did not engage in formal discovery here because settlement negotiations began at the motion-to-dismiss stage, "courts have held that settlements are permissible where, 'notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case.'"[20] Prior to mediating,

---

[18] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 769 ("Plaintiffs acknowledge that continued litigation would be complex, costly, and likely continue for several years with no guarantee of relief. So this factor also favors approval.") (citation omitted).
[19] *Id.* (citing *Green v. Platinum Rests. Mid-Am. LLC*, No. 3:14-CV-439, 2022 WL 1240432, at *5 (W.D. Ky. Apr. 27, 2022)).
[20] *Déjà Vu Servs.*, 925 F.3d at 898 (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981)).

Defendants provided such information.[21] Moreover, Plaintiffs' counsel retained an expert to search for evidence that the information exfiltrated during the Data Security Incident was available on the dark web. Barthle Decl. ¶ 3.

### iv.  The likelihood of success on the merits

"The likelihood of success on the merits 'provides a gauge from which the benefits of the settlement must be measured.'"[22] This case faces substantial hurdles should it continue forward. Plaintiffs would need to survive Defendants' forceful motion to dismiss, secure class certification, and surmount any further dispositive motions Defendants might file before proving their case at trial.[23]

### v.  The opinions of class counsel and class representatives

"'The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement.'"[24] Proposed class counsel supports the settlement, Barthle Decl. ¶¶ 4-5, 7, which "favors approval too."[25]

---

[21] *See, e.g.*, *Morley Cos.*, 639 F. Supp. 3d at 770 ("Although the parties did not conduct formal discovery, they have conducted ample informal discovery for Plaintiffs to 'adequately assess their case and the desirability of the proposed settlement….' This factor thus favors approval.") (quoting *Kritzer v. Safelite Sols.*, LLC, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012)).

[22] *Morley Cos.*, 639 F. Supp. 3d at 770 (citing *Poplar Creek Dev. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)).

[23] *See, e.g.*, *id.* ("Plaintiffs have acknowledged the risk of continued litigation, especially the 'substantial hurdles' for data-breach cases at the pleadings stage. Therefore, this factor favors approval.").

[24] *Id.* (quoting *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)).

[25] *Morley Cos.*, 639 F. Supp. 3d at 770.

### vi. The reaction of absent class members

Out of a Settlement Class of 1,945,788, there have been no objections and only 74 requests for exclusion (0.000038%) from the Settlement. Passarella Decl. ¶ 23. This reflects a favorable reaction of absent class members. *See, e.g.*, *In re Wright & Fillipis*, 2024 WL 3083436, at *2 (granting final approval of class action settlement in data breach case where there were no objections and 11 requests for exclusion); *In re Hope Coll. Data Sec. Breach Litig.*, No. 1:22-CV-01224, 2024 WL 2268559, at *2 (W.D. Mich. May 20, 2024) (granting final approval of class action settlement in data breach case where there was 1 potential objection and 6 requests for exclusion); *Thomsen*, 2023 WL 3437801 at *2 (granting final approval of class action settlement in data breach case where there were 3 objections and 28 requests for exclusion). Accordingly, this factor also supports final approval.

### vii. The public interest

"'[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable' and settlement conserves judicial resources.'"[26] The public interest and judicial resources would be served by relief for the class.[27]

---

[26] *Id.* (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)).

[27] *See, e.g.*, *id.* ("Settling this 694,679-person class action would further the public interest by providing relief for the entire Class and conserving judicial resources. Therefore, this factor favors approval.").

24

## IV.    CONCLUSION

For the reasons set forth above, final approval of the settlement and certification of the settlement class are warranted. Accordingly, Plaintiffs request that the Court (i) enter the proposed orders granting this motion (which Defendants do not oppose) and Plaintiffs' separately filed Motion for Attorney's Fees, Expenses, and Service Award (on which Defendants take no position) and (ii) enter a final judgment dismissing this case.

Dated: November 20, 2024

Respectfully Submitted,

*/s/ Joseph M. Lyon*
Joseph M. Lyon
THE LYON FIRM
2754 Erie Avenue
Cincinnati, OH 45208
Tel: (513) 381-2333
Fax: (513) 766-9011
Email: jlyon@thelyonfirm.com

Patrick A. Barthle II
Florida Bar No. 99286
pbarthle@ForThePeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

*Attorneys for Plaintiffs and Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ *Joseph M. Lyon*
Joseph M. Lyon